**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, LOCAL 453, Respondent.**

**No. 19649.**

United States Court of Appeals, Eighth Circuit.

Oct. 15, 1970.

Rehearing Denied and Rehearing En Banc Denied Nov. 9, 1970.

Nancy M. Sherman, Atty., N. L. R. B., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Leon M. Kestenbaum, Atty., N. L. R. B., on the brief.

Benjamin J. Francka, Springfield, Mo., for respondent.

Before BLACKMUN *, MEHAFFY and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

The National Labor Relations Board makes application to this court for en-forcement of its order against respondent, International Brotherhood of Electrical Workers, AFL-CIO, Local 453, its officers, agents and representatives. The Board by designated three-member panel found that Local 453 violated § 8 (b) (4) (ii) (B) of the Act by statements made by its business representative to an Army procurement officer and to the owner of the Chapman Construction Company that Local 453 would picket Fort Leonard Wood unless they ceased doing business with Delp Refrigeration Company. The Board also found that Local 453 violated § 8(b) (4) (i) (B) of the Act by picketing to induce work stoppage at Fort Leonard Wood with an object of forcing the Chapman Company to cease doing business with Delp. The Board decision and order (reported at 170 NLRB No. 155) adopts, with minor modifications, the findings, conclusions and recommendations of the trial examiner. We grant enforcement of the Board's order.

Respondent designates the issues as deprivation of a fair and impartial trial by reason of the bias and prejudice of the trial examiner and questions the sufficiency of the evidence to support each of the alleged violations.

Delp Refrigeration is a sole proprietorship located at Rolla, Missouri and engaged primarily as a heating and air conditioning contractor. Its employees are represented by the Congress of Independent Unions (CIU), the charging party in this case. Prior to April 3, 1967 the authorities at Fort Leonard Wood opened bids on a proposed contract for air conditioning and associated electrical work incident to the remodeling of Buildings 2253 and 2254 at the Fort. Delp was the low bidder. On April 3, 1967 Ray Edwards, Assistant Business Representative of IBEW, called on Daniel Jakovich, Jr., Chief of the Central Procurement Division and Principal Contracting Officer of the Fort, and objected to an award of the contract to Delp

* Mr. Justice Blackmun, who sat on this panel as a member of this court before his elevation to the United States Su-preme Court, did not participate in the consideration or decision of this case.

on the ground that Delp lacked sufficient experience to perform the electrical work. He also raised the question of a possible conflict of interest because Delp's brother worked for the post engineer. Jakovich testified that Edwards said the Union would picket at the gates of the Fort if the award was made to Delp. Edwards denied having made this statement. Jakovich also testified that he told Edwards he would postpone the award pending an investigation of Delp's qualifications and that such a survey was made and was favorable to Delp. The contract was awarded to Delp on May 5, 1967 and Delp commenced work on Buildings 2253 and 2254 on or about June 1, 1967.

In the middle of April Delp began work on a different project as a subcontractor to the Chapman Construction Company to install sheet metal apparatus and electrical equipment required under a general contract held by Chapman to remodel and repair Building 442. Norman A. Chapman is the owner of Chapman Construction Company. On April 3, 1967 Edwards, whom Chapman had never previously met, stopped at Building 442 and asked who was going to do the electrical work on that building and Chapman replied that he had not awarded the electrical work. Edwards testified that Chapman said he would let him know who was going to do the work if Edwards would check back with him.

Respondent's evidence indicates that on April 12 or 13 Chapman met with Glen Vaught, superintendent for Magann Electric Company, regarding substitution of that company for Delp as the subcontractor on Building 442. Approximately two weeks after the April 3 meeting there was a second meeting between Chapman and Edwards which took place at the job site on Building 442. Chapman testified that Edwards told him that if Delp were not replaced by a firm employing IBEW members the Union would engage in "informational" picketing. Edwards denied having made any such statement and testified that Chapman told him that Delp was not going to do any more work and that he had in-structed Delp not to come back to the project because some of Delp's employees had stolen some wire or cable from the job.

Several meetings followed this discussion, but the next significant meeting occurred on May 3, 1967. Respondent's version of that meeting is that Edwards along with Harold Johnston, a member of Local 453, went to Building 442 and observed the work that was going on by Delp. Edwards testified that nothing was said about picketing. Chapman testified that Edwards told him that he had given him a "chance" and that "there will be a picket on this job as quick as I can get it made up." Although Johnston testified that nothing was said about picketing, he did testify that as he and Edwards were leaving Chapman said, "I guess I know what to expect."

Mr. Dean Sooter, President of Local 228, United Brotherhood of Carpenters and Joiners, AFL-CIO, testified that Mr. Chapman had been to his house on the night of May 3, 1967 and had stated that a business agent for IBEW had told him he had given him his last chance and was going to picket. Sooter also testified that about two weeks prior to this discussion Chapman had called him on the telephone and told him that the business agent for IBEW had stated that he was going to picket Chapman. Sooter testified that the reason for these conversations was that Chapman was seeking advice to avoid the picket and to find out if members of the Carpenters Union would cross the picket line.

Delp was not taken off the project. Union pickets patrolled the three main entrances to the Fort during the period May 5 to May 18, 1967. The signs read as follows:

"Delp does not employ members of Local 453, IBEW, AFL-CIO. Local Union No. 453, IBEW, is not attempting to organize the employees of Delp and is not requesting recognition by Delp. Local Union 453, IBEW, is not attempting to induce any individual employed by any person in the course of his employment not to pick up, de-

liver, or transport any goods or not to perform any services. Local Union 453, IBEW, is not attempting to induce any person to cease doing business with Delp. Local Union 453, IBEW, does not have a dispute with any other or (sic) employer on this job. This notice addressed only to the General Public."

The trial examiner found that some three hundred thirty construction workers employed by contractors performing construction work at the Fort, including employees of Chapman, turned back at the Fort gates, resulting in corresponding work stoppages on contracts having an aggregate face value in excess of $16,000,000.00.

From the foregoing, the trial examiner and the Board found that the Act was violated as aforementioned.

■ We turn to the examiner's conduct of the hearing as this is the main thrust of respondent's argument and in fact is intertwined with respondent's argument contesting the sufficiency of the evidence. Respondent argues that the trial examiner interfered with the cross-examination of the chief prosecuting witness, Chapman, by frequent interruptions and with undue assistance and by imposing unjustified limitations upon counsel's cross-examination. Our review of the record, however, does not support these assertions as we will point out in some examples forming the basis for respondent's argument. As to limiting the cross-examination, respondent cites an incident in the record where the trial examiner was going to limit cross-examination attempting to impeach a witness because the witness could not well recall the dates. It was the examiner's position that he felt petitioner would then rehabilitate the witness, all of which would consume time, but when respondent's counsel explained that the witness' dates were at variance with the dates his witness was going to testify to, the examiner permitted him to proceed. The examiner told counsel to take the dates up one at a time, and it appears that the trial examiner was attempting to keep

counsel from tripping the witness up with broad questions, not, as respondent alleges, to limit the area into which counsel might inquire. In another episode, obviously the examiner was trying to clarify the facts and not limit the discussion as there was some difficulty in identifying the events. Respondent's counsel stated that the only way he could keep the events straight was to call them first, second and third meetings, and the witness agree. Thus, there was no limitation of this cross-examination.

■ As to frequent interruptions of the so-called chief prosecuting witness, the trial examiner took up respondent's line of questioning to see if the witness could recall certain dates which were pertinent to the inquiry. It appears that he was attempting to help respondent by getting the witness to reply to respondent's questions. As to trial examiner's assistance to witness Chapman, it appears that the trial examiner was attempting to get the witness to respond to respondent's questions, and thus he was assisting respondent's counsel, and not the witness.

A review of the whole transcript demonstrates that witnesses for both sides were frequently interrupted, but there is nothing to indicate to us a showing of bias or prejudice by these interruptions since the trial examiner's questions were pertinent and were made in an attempt to clarify the testimony on the points the witness was testifying to, regardless of whose witness it was.

The above points out only a few of the many allegations made by respondent to reflect bias or prejudice on the part of the trial examiner. Actually just as many examples could be shown to make the same claim of bias or prejudice to the other party.

29 C.F.R. § 102.35(j) authorizes the trial examiner "to call, examine, and cross-examine witnesses and to introduce into the record documentary and other evidence. * * *" We find, as we did in NLRB v. Superior Sales, Inc., 366 F. 2d 229 (8th Cir. 1966), after examining the record that respondent's contention

that it did not receive a fair hearing because of the bias of the trial examiner is without merit.

 Next, respondent contends that the general counsel has not met the burden of proof by showing a violation of the Act by respondent in threatening to place a picket at the Fort with an object of forcing the Department of the Army and Chapman to cease doing business with Delp. The lack of credibility of Jakovich and Chapman is questioned, but this is a matter primarily for the trier of facts. We said in NLRB v. Morrison Cafeteria of Little Rock, Inc., 311 F.2d 534, 538 (8th Cir. 1963):

> "The rule in this Circuit is that 'the question of credibility of witnesses and the weight to be given their testimony' in labor cases is primarily one for determination by the trier of facts. (Citing cases.) This Court is not the place where that question can be resolved, unless it is shocking to our conscience."

NLRB v. Superior Sales, Inc., *supra;* NLRB v. Ralph Printing & Lithographing Co., 379 F.2d 687 (8th Cir. 1967).

There is nothing in the record to cause us to hold that the testimony of Jakovich or Chapman is unworthy of belief. Apparently there was no one present at the meeting between Jakovich and Edwards except those two witnesses and only Chapman and Edwards were present at the meeting when the first threat was made to Chapman. At the May 3 meeting between Chapman and Edwards other persons were present, but apparently only Johnston knew anything of any conversations between the two. While he stated he did not know of any threat to picket, he did relate Chapman's remark at the close of that meeting which lends support to petitioner's case. Mr. Sooter also supports Chapman's testimony, and with this direct evidence in the setting here and with attending cir-

cumstances we cannot hold that the Board's findings are without support by substantial evidence.

It is argued that there is no substantial evidence to support the finding that respondent violated the Act by picketing to induce work stoppage at the Fort with an object of forcing the Chapman Company to cease doing business with Delp.

The picketing did in fact bring about a work stoppage. The issue is whether the object of the picketing was proscribed by the Act. In determining this issue the Board is not limited to a consideration of the picketing alone or to the wording of the pickets' signs. See, e. g., International Brotherhood of Electrical Workers, Local 480, AFL-CIO v. NLRB, 134 U.S.App.D.C. 178, 413 F.2d 1085 (1969). In the light of the threats that were found to have been made to Chapman and his actions thereafter, we cannot say that the evidence in support of the Board's findings is not substantial.

Respondent finally contends that it had complied with the standards of Sailors Union of the Pacific (Moore Dry Dock Co.), 92 NLRB 547, 27 LRRM 1103 (1950), and was engaged in primary picketing. Even though these standards are met, that is not dispositive of the issue. The Board is not thereby relieved of its duty to determine whether the object of the picketing is truly primary or not. International Brotherhood of Electrical Workers, Local 480, AFL-CIO v. NLRB, *supra*; NLRB v. Northern California District Council of Hod Carriers & Common Laborers of America, AFL-CIO, 389 F.2d 721 (9th Cir. 1968).

Our canvass of the record leads to the conclusion that the trial examiner was not biased or prejudiced, and that there is sufficient substantial evidence to support the Board's findings and conclusions. We therefore grant enforcement of the Board's order.