**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 445, Respondent.**

**Docket 72–1260, No. 195.**

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 1972.

Decided Jan. 30, 1973.

ers, Local 38, 428 F.2d 144, 151–52 (6 Cir.), cert. denied, 400 U.S. 943 (1970).

4. See note 1, *supra*.

David Miller, Washington, D. C. (Peter G. Nash, General Counsel, Patrick Hardin, Associate General Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Charles N. Steele, N.L.R.B., on the brief), for petitioner.

David Kramer, New York City (Joseph S. Rosenthal, Friedlander, Gaines, Ruttenberg & Goetz, New York City, on the brief), for respondent.

Before FRIENDLY, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge:

The National Labor Relations Board seeks enforcement of its order directing respondent Local 445 to cease and desist from violating Section 8(b)(7)(C), Section 8(b)(4)(i) and (ii)(A) and Section 8(b)(4)(ii)(B) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. We find that there is substantial evidence in the record to support the Board's finding of violation and therefore grant the Board's petition.

## I. The Background

Edward L. Nezelek, Inc. (the "Company") is a general contractor engaged in various construction projects in Sulli-

van County, New York. On July 13, 1970, the Company was awarded a contract to build two large buildings, including a gymnasium, on the campus of Sullivan County Community College in Loch Sheldrake, New York.

The Company had no contracts with any Teamsters locals. Before the construction contract was awarded the Union of the Teamsters, Local 445, approached the Company and requested that it sign a "Heavy, Highway and Building Construction Agreement." Shortly thereafter, Raymond Ebert, Business Agent of the Union, called Douglas Cullison, the Company's Chief Estimator, and requested a pre-job conference. In another later call the request was repeated. Cullison replied that a meeting with the Union would be pointless since the Company employed no Teamsters. However, a pre-job conference was held later and Cullison and two other Company officials met with Ebert and three other union officials. During the course of the meeting Ebert told Cullison that Pshonick and Son, with which the Company had made a contract for ready-mix concrete, was unacceptable because it had no agreement with the Union. Ebert suggested Sullivan County Redi-Mix, the only Union ready-mix company in Sullivan County, as a substitute. Both Ebert and Daley, the Secretary-Treasurer of the Union, indicated that if Pshonick supplied the ready-mix concrete the Union would picket and "[n]ot a wheel will turn. Nothing will move." Daley and Ebert also told the Company representatives that the Company would have to hire a transportation coordinator.

The meeting ended with the agreement unsigned. Cullison told the Union representatives that he saw no reason to sign the agreement because the company employed no teamsters but that he would take the matter up with Nezelek, the Company president.

On August 27, Nezelek and Ebert met and Nezelek indicated that the Company planned to have Pshonick supply concrete to the job. Nezelek also refused to hire a transportation coordinator. Ebert responded that if the Company did not hire a coordinator, "there won't be any wheels turning on this job."

Following a further refusal by the Company to sign the agreement and to hire a transportation coordinator, picketing began on September 3 and continued until December 2, when it was halted by court order. Maggiolo, an excavating contractor, honored the picket line and informed the Company that it would not move any equipment on the job so long as there was picketing. Other work on the job could not begin until Maggiolo completed the initial excavation work.

## II.  Board's Action

The Board found that the union's picketing of the jobsite had the object of compelling the Company to hire a transportation coordinator and to sign the construction agreement and was therefore in violation of Section 8(b)(7)(C). The Board also concluded that by threatening to picket if the Company used I. Pshonick & Son to supply concrete the Union violated Section 8(b)(4)(ii)(B). Finally, the Board found that the Union violated Section 8(b)(4)(i) and (ii)(A) by picketing the Company's jobsite to compel it to sign an agreement violative of Section 8(e).

## III.

A.   Section 8(b)(7)(C).[1]

Subsection C of Section 8(b)(7) prohibits picketing by an uncertified

1. Section 8(b)(7)(C) provides in relevant part that:

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organiza-

union where the object is to force or require an employer to recognize or bargain with a labor organization if no election petition has been filed within a reasonable time after the start of picketing. Whether the Union was seeking bargaining or recognition when it picketed is a question of fact on which we must uphold the Board's determination if it is supported by substantial evidence. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The evidence on which the Board acted was clearly sufficient to establish a violation of subsection (C). That evidence showed at least that one object of the picketing was to require the Company to hire a transportation coordinator and to sign the construction agreement. As this court stated in NLRB v. Suffolk County District Council of Carpenters, 387 F.2d 170, 173 (2d Cir. 1967), "it is sufficient to make out a violation if one of the union's objects is within the statutory language." In fact the Union admitted before the trial examiner that the hiring of a transportation coordinator and the refusal to sign the contract were the reasons for the picketing:

> ". . . the primary objective of this picketing was for the company's refusal to hire Street [as transportation coordinator], [and its] refusal to sign the contract."

**B. Section 8(b)(4)(ii)(B).**

■ Section 8(b)(4)(ii)(B) prohibits a Union from threatening or coercing any person engaged in commerce where the object of such conduct is to force "any person to cease using, selling, . . . or otherwise dealing in the products of any other producer . . . or to cease doing business with any other person . . . ." There is ample evidence in the record to support the Board's finding that the Union threatened the Company with picketing if the Company used I. Pshonick & Son to supply concrete to the jobsite.

■ Whether the Union's conduct has an improper object is a question of fact, and if the Board's finding on the issue is based on substantial evidence, it must be upheld. At the pre-job conference Ebert informed the Company officials that Pshonick was unacceptable, and should be replaced by Sullivan County Redi-Mix, the only Union ready-mix company in Sullivan County. He also indicated, as did Daley, the Secretary-Treasurer, that if Pshonick supplied the concrete the Union would picket and "[n]ot a wheel will turn. Nothing will move." It was well within the Board's power to find that Ebert's statement was a threat to immobilize the Company if it hired Pshonick.

**C. Section 8(b)(4)(i) and (ii)(A).**

The Board also found that Articles VIII and XI(D) of the Heavy, Highway and Building Construction Agreement which the Union wished the Company to sign violated Section 8(e) of the Act[2] and that therefore the Union vio-

---

tion is currently certified as the representative of such employees:
. . .
(C) where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: . . .

2. Section 8(e) provides that:
"It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforceable and void: *Provided*, That nothing in this subsection (e) shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, or repair of a building, structure or other work: *Provided further*, That for the purposes of this subsection (e) and section 8(b)(4)(B)

lated Section 8(b)(4)(i) and (ii)(A) by picketing the Company's job site to compel it to sign the Agreement.

Article 8 of the construction agreement provided:

## ARTICLE VIII—EMPLOYEE RIGHTS

The Employer shall not discharge or suspend or otherwise discipline any Employee for refusing to cross a picket line, and such refusal shall not be considered a violation of this Agreement.

■■ This clause is broad enough to protect refusal to cross secondary picket lines having no connection with disputes concerning job site contracting, and therefore not within the construction exemption to Section 8(e). See Truck Drivers' Union Local No. 413 v. NLRB, 118 U.S.App.D.C. 149, 334 F.2d 539, 543, cert. denied, 379 U.S. 916, 85 S.Ct. 264, 13 L.Ed.2d 186 (1964). Since Article XX of the Agreement seems adequate to protect refusal to cross a primary picket line, it could be argued that Article VIII serves *only* to protect the refusal to cross a secondary picket line.[3]

Article XI(D) provides:

If it is found that the sub-contractor is not complying with the provisions of

the terms 'any employer,' 'any person engaged in commerce or in industry affecting commerce,' and 'any person' when used in relation to the terms 'any other producer, processor, or manufacturer,' 'any other employer,' or 'any other person' shall not include persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on the goods or premises of the jobber or manufacturer or performing parts of an integrated process of production in the apparel and clothing industry: *Provided further*, That nothing in this Act shall prohibit the enforcement of any agreement

this Agreement, the Union shall give the prime contractor forty-eight (48) hours notice before any action is taken by the Union. Failure on the part of the prime contractor to comply with the terms of this provision will leave the Union free to withdraw its employees until such time [as] the terms and conditions of this Agreement are complied with and shall make the prime contractor responsible for all lost wages and benefits as a result of such withdrawal.

The Board found that this Article violated Section 8(e) because it allowed the Union to enforce its lawful hot cargo agreements by means prohibited by the Act, i. e., by the use of economic force. While Congress in outlawing hot cargo agreements under Section 8(e) granted a special exception for agreements relating to the contracting or subcontracting of work to be done at the jobsite, the Board has held, and we agree, that Congress intended that enforcement of such provisions may be effected only through the courts. See NLRB v. IBEW & Local Union No. 769, 405 F.2d 159 (9th Cir. 1968), cert. denied, 395 U.S. 921, 89 S.Ct. 1772, 23 L.Ed.2d 237 (1969).

Affirmed.

which is within the foregoing exception."

3. Article XX:
   *Protection of Rights*
   *Picket Line:* It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's place of business.