**STORER COMMUNICATIONS, INC.,**
**Plaintiff–Appellant,**

v.

**NATIONAL ASSOCIATION OF BROAD-CAST EMPLOYEES AND TECHNI-CIANS, AFL–CIO, et al., Defendants–Appellees.**

**No. 86–3894.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 25, 1987.

Decided Aug. 23, 1988.

F. Wilson Chockley, Jr., argued, Michael T. McMenamin, Kenneth A. Zirm, Walter, Haverfield, Buescher & Chockley, Cleveland, Ohio, for plaintiff-appellant.

John R. Canzano, argued, Samuel C. McKnight, Klimist, McKnight & Sale, Southfield, Mich., Donald W. Fisher, Toledo, Ohio, for defendants-appellees.

Before ENGEL, Chief Judge [*],
MERRITT and RYAN, Circuit Judges.

MERRITT, Circuit Judge.

This secondary boycott labor case brought under § 8(b)(4) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(b)(4), and § 303 of the Labor Management Relations Act, 29 U.S.C. § 187 (providing for actions to enforce the prohibitions against secondary boycotts) is controlled by the Supreme Court's recent decision in *DeBartolo Corp. v. Florida Gulf Coast Bldg. and Const. Trades Council,* —— U.S. ——, 108 S.Ct. 1392, 1400, 99 L.Ed.2d 645 (1988), which holds

---

[*] The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988.

that "handbilling without picketing" does not violate § 8(b)(4) because such activity is not "coercive" within the meaning of the statute.

Storer Communications, Inc., owner of Cleveland television station Channel 8, appeals the District Court's grant of the National Association of Broadcast Employees and Technicians' motion for summary judgment. This case raises this issue: whether the union violated § 8(b)(4) when its members distributed handbills urging a consumer boycott at the entrances to secondary businesses and wrote letters to, telephoned and visited secondary businesses warning of the impending handbilling? We affirm the District Court because no genuine issue of material fact remains and the handbilling, letters, phone calls and visits are permitted under *DeBartolo.*

## I.

In the Spring of 1983 when this dispute arose, Storer and the union were parties to a collective bargaining agreement set to expire March 31, 1983. During the March 30 bargaining session, Storer announced a new wage proposal for TV–8's union members calling for a two percent annual reduction in wages for each of the contract's three years. Negotiations continued past the agreement's expiration date, but on May 3, 1983, the union went on strike.

Beginning on March 31, the union conducted a letter-writing campaign asking businesses to withdraw their advertising on TV–8. There were several versions of the letters. The first letter indicated that only as a last resort would the union encourage a consumer boycott of those advertisers that did not pull their ads. App. 841. The other letters stated that if the businesses continued to advertise on TV–8, the union would distribute handbills in front of their buildings to inform the public that the businesses continued to advertise on the television station. The letters promised that if the businesses cancelled their TV–8 advertising the union would discontinue its plans to distribute handbills in front of their businesses. App. 842–46.

Some union members telephoned businesses, informing them that if they did not pull their ads, they would be subject to the handbilling. Some members also visited businesses and personally informed managers or other employees that the union planned to conduct handbilling in front of their shops if their advertising on TV–8 continued. From approximately early May through mid-June, union members visited some 19 businesses which advertised on TV–8 and distributed handbills to customers urging them not to patronize the stores. The handbills stated:

**PLEASE DO NOT PATRONIZE!**

**[advertiser]**

**Continues to Advertise on
Unfair—Struck TV8
Local 42**

**National Association of Broadcast Employees and Technicians, AFL–CIO**

This handbill is addressed exclusively to the public and is not an appeal to employees to refuse to perform services nor is it an appeal to any other company to refuse to perform services.

App. 38.

The parties agree that usually two or three union members at a time handbilled each business. Storer Brief at 16. Apparently only on one occasion did more members—six—gather at a business to handbill. App. 941. The members frequently stood at or near the front entrances to advertisers' buildings, offering handbills to approaching customers. On occasion, they had brief conversations with customers. App. 992, 1000.

The members walked around in front of the buildings. According to the deposition testimony, by walking around they were attempting to distribute the handbills to customers, trying to keep warm, and trying to keep feet from cramping. App. 970, 340–41, 1000. They did not make a deliberate, concerted effort to block entrances.

Sometimes union members gave out handbills in the advertisers' parking lots in front of the buildings. The members ei-

ther handed them out to people as they drove into the parking lots, or as they exited from their cars. App. 974, 970. They did not force the cars to stop, nor did they block their entry into the lot. App. 927, 974, 981.

There is no evidence that the union members ever carried signs or placards, chanted, spoke in loud voices, walked or marched in a definite pattern, deliberately blocked or prevented customer ingress or egress, forced cars to stop, or otherwise signalled to the public that they were doing anything other than peacefully passing out handbills. Some businesses cancelled their advertising and use of TV–8 production facilities during this time, but the parties dispute whether the cancellations were a direct result of the handbilling campaign.

■ When reviewing a lower court's grant of summary judgment under Rule 56 of the Federal Rules of Civil Procedure, we apply a *de novo* standard of review, *Pinney Dock and Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir. 1988); *National Bank of Detroit v. Shelden*, 730 F.2d 421, 423 (6th Cir.1984), making all reasonable inferences in favor of the party who did not move for summary judgment. *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir.1983).

Storer contends that there are genuine issues of material fact which need to be determined by a trier of fact. The issues of disputed facts claimed are whether union members restrained customer ingress and egress, had an unlawful objective, induced work stoppage, and truthfully communicated to the public. Storer Brief at 1–2.

■ The evidence presents a comprehensive picture of the union's conduct during the labor dispute. It shows that union members stood in front of or near entrances and walked around entrance areas and parking lots during the handbilling distribution. There is no evidence showing that union members blocked or prevented customer ingress or egress. Similarly, Storer has not shown that the objective of the conduct was unlawful or that it involved anything other than the dissemination of

ideas. The only evidence that union members were picketing, rather than walking around distributing handbills, is from two affidavits. A Waterbed City employee claims that a union member came into the shop and warned that the union "would be picketing" in front of the store the following day. App. 869–70. The affidavit also states: "By way of explanation the man showed me a handbill..." App. 869. A Storer Account Representative states that several advertisers called him and indicated that union members were "picketing" outside their stores. App. 902. But the affidavit does not describe the union members' conduct, nor does it give any reason to believe that the members were actually picketing instead of handbilling. No other evidence indicates that union members were picketing in front of secondary businesses. There is no substantial evidence to support a finding of work stoppage and no evidence that the union induced employees to refuse to perform their work. Storer's contention that factual issues remain on the issue of whether the union's letters were truthful is likewise unpersuasive.

A few minor factual disputes are present in this large record, but they are not material. The Supreme Court has explained:

> By its very terms, ... [summary judgment] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The facts show that the union's handbilling activity involved walking around, approaching customers, and at times having brief conversations with them. These physical acts did not constitute a picket line, nor did they seek an automatic response. The real issues in this case are not factual ones, but legal ones, just decided by the Supreme Court in *DeBartolo Corp. v. Florida Gulf Coast Bldg. and Const. Trades Council*, —— U.S. ——, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988).

## II.

The facts in this case are nearly identical to those in *DeBartolo:* "[t]here was no violence, picketing, or patrolling and only an attempt to persuade customers not to shop in the mall." 108 S.Ct. at 1399. Here, as in *DeBartolo*, the union peacefully distributed handbills to customers, urging them to boycott secondary businesses.

*DeBartolo* squarely resolves the legal issues in this case. The Supreme Court held that peaceful handbilling does not constitute coercive, threatening, or restraining activity in violation of Section 8(b)(4)(ii)(B), even when the handbilling urges a total consumer boycott of neutral secondary businesses. 108 S.Ct. at 1404. The Court explained:

> The loss of customers because they read a handbill urging them not to patronize a business, and not because they are intimidated by a line of picketers, is the result of mere persuasion, and the neutral who reacts is doing no more than what its customers honestly want it to do.

*Id.* at 1400. The Court concluded: "In our view, interpreting § 8(b)(4) as not reaching the handbilling involved in this case is not foreclosed either by the language of the section or its legislative history." *Id.* at 1404. Under *DeBartolo*, the union's handbilling did not violate § 8(b)(4).

Storer also argues that the union's letters, telephone calls and visits to secondary employers constituted coercive conduct. We view these activities as permissible under *DeBartolo* because they merely constituted the union's peaceful warnings that it was about to exercise its rights under § 8(b)(4). Since the handbilling itself was not proscribed activity, peaceful warnings that handbilling will occur are not unlawful. *See DeBartolo*, 108 S.Ct. at 1400; *N.L.R.B. v. Servette, Inc.*, 377 U.S. 46, 57, 84 S.Ct. 1098, 1105, 12 L.Ed.2d 121 (1964) ("statutory protection for the distribution of handbills would be undermined if a threat to engage in protected conduct were not itself protected").

Because there is no genuine issue of material fact in this case and because the union's handbilling and other activities were not coercive under § 8(b)(4), we affirm the District Court's grant of summary judgment in favor of the union.