957 F.2d 566
 139 L.R.R.M. (BNA) 2593, 121 Lab.Cas. P 10,019,
1992-1 Trade Cases P 69,725
 OZARK INTERIORS, INC., Appellant,
v.
LOCAL 978 CARPENTERS, an Unincorporated Labor Organization,
and its Parent and Alter Ego, Carpenters District
Council of Kansas City, Appellees.
 No. 91-1936.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 9, 1991.
Decided Feb. 24, 1992.
Rehearing Denied April 6, 1992.
 
 Steven E. Marsh, Springfield, Mo., for appellant.
 Joseph W. Moreland, Kansas City, Mo., argued (Michael T. Manley, on brief), for appellee.
 Before ARNOLD,* Circuit Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.
 FAGG, Circuit Judge.
 
 
 1
 Ozark Interiors, Inc. (Ozark) filed this unfair labor practice action under 29 U.S.C. § 187 against Carpenters Local 978 and Carpenters District Council of Kansas City (collectively Carpenters) asserting Carpenters threatened National Contractors (National) with picketing and other coercive secondary activity in violation of 29 U.S.C. § 158(b)(4)(ii). The district court granted summary judgment in favor of Carpenters. Ozark Interiors, Inc. v. Carpenters Local No. 978, 755 F.Supp. 875, 884 (W.D.Mo.1990). Later, Ozark filed a motion seeking leave to amend its complaint. The district court denied Ozark's motion. Ozark appeals. We reverse and remand for further proceedings.
 
 
 2
 National held a general contract to provide finishing work at a new store in a shopping mall. Ozark was one of three subcontractors who submitted bids to perform drywall work on the job. Ozark's employees belonged to an independent union. The other two subcontractors' employees belonged to the local union, Carpenters. After Ozark submitted the winning bid and National awarded the job to Ozark, Hall, an agent for Carpenters, contacted Smock, the project's job manager and president of National at the time, to determine whether National had awarded the subcontract to an employer of Carpenters members. As a result of this discussion, National inserted a special clause in the subcontract requiring Ozark to have a working agreement with Carpenters and sent the contract to Ozark for signature. Ozark informed National it could not sign the contract. Because National did not want to risk a picket or other problems on the job, National awarded the subcontract to an employer of Carpenters members at a higher price.
 
 
 3
 The district court properly granted summary judgment in favor of Carpenters only if Ozark presented no probative evidence from which a reasonable jury could find Carpenters' activities violated section 158(b)(4)(ii). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Section 158(b)(4)(ii) prohibits a labor organization's agents from threatening or coercing any person engaged in an industry affecting commerce for the purpose of achieving certain objectives. The applicable prohibited objectives include forcing any person to cease doing business with any other person (except by means of otherwise lawful primary picketing), or requiring any employer to recognize or bargain with a certain labor organization as its employees' representative if the employees already have a certified representative. 29 U.S.C. § 158(b)(4)(ii)(B), (C) (1988). Under section 158(b)(4)(ii)(B), it is unlawful for a union (Carpenters) to pressure a neutral or secondary employer (National) with the purpose of forcing any person (National, in this case) to cease doing business with a primary employer (Ozark). Local Union No. 501, Int'l Bhd. of Elec. Workers v. NLRB, 756 F.2d 888, 892 (D.C.Cir.1985).
 
 
 4
 As the district court recognized, Ozark's case turns on statements Hall made to Smock. In his deposition testimony, Smock relates his discussions with Hall about the subcontract as follows:
 
 
 5
 [Smock]: Mr. Hall said, you are going to do it union because if you don't, we'll probably have to ... go picketing.... I said, we will do it union.... Ozark Interiors is a union contractor....
 
 
 6
 [Attorney for Carpenters]: And he told you what in response to that?
 
 
 7
 [Smock]: He said, "Well, they're not members of this local carpenters union." ... And since [Ozark is] not a member of this carpenters union, [ ] if you use them, we'll probably have to picket the job and everything.
 
 
 8
 [Attorney for Carpenters]: Did he say what kind of picketing?
 
 
 9
 [Smock]: No, sir.... I presumed when [he said] picketing and everything [he meant] try to shut the job down....
 
 
 10
 ....
 
 
 11
 [Attorney for Carpenters]: [D]id someone specifically tell you, "We're going to picket" or "I'm going to picket"?
 
 
 12
 [Smock]: Mr. Hall did say that if you use Ozark Interiors, we're going to have some problems. So, therefore, you better use somebody else.
 
 
 13
 ....
 
 
 14
 [Attorney for Carpenters]: [W]hen he told you[,] "[Y]ou're going to have some problems," it was you who decided problems meant pickets. Is that correct?
 
 
 15
 [Smock]: That's very true because he said you have to do it union and Ozark is not a member of this local carpenters union.... [I]t's not assumption, I would say it's pretty fact--that if I did use Ozark, that they would probably picket [ ].
 
 
 16
 Hall, on the other hand, denied he threatened National. The district court found Ozark "failed to establish the existence of a genuine issue of material fact ... preclud[ing] entry of summary judgment." 755 F.Supp. at 879. The district court also found "there was never any distinct reference that [Carpenters] might attempt to shut down the [job]," id. at 882, Carpenters never explicitly threatened to picket unlawfully, id., and Hall's reference to "problems" could refer to a number of lawful primary activities, id. at 883. The district court concluded Carpenters' vague references to "problems" did not violate section 158(b)(4)(ii) as a matter of law. Id.
 
 
 17
 On appeal, Ozark argues the district court decided a genuine issue of material fact, which a jury should decide. We agree. Although the district court articulated the proper standards for reviewing a summary judgment motion, id. at 878-79, the court failed to view Carpenters' motion in the light most favorable to Ozark and give Ozark the benefit of all reasonable inferences from the record. Instead, the district court evaluated Smock's conflicting testimony and effectively determined a reasonable jury could not find Hall threatened Smock with unlawful picketing to force National to cease doing business with Ozark.
 
 
 18
 "Ambiguities and [ ] conflicts in a deponent's testimony are generally matters for the jury to sort out...." Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289 (8th Cir.1988). Summary judgment is inappropriate when the record permits reasonable minds to draw conflicting inferences about a material fact. Donovan v. General Motors, 762 F.2d 701, 703 (8th Cir.1985); Wermager v. Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir.1983). Here, we believe a reasonable jury could find "that the language and conduct of [Carpenters'] representative[ ], [Hall], effectively conveyed the message that unless [National] kept [Ozark] off the jobsite, [Carpenters] would engage in [unlawful] picketing." Bryant Air Cond. & Htg. Co. v. Sheet Metal Workers' Int'l Ass'n, Local No. 541, 472 F.2d 969, 972 (8th Cir.1973). Thus, we reverse the district court's order granting summary judgment and remand this case for further proceedings.
 
 
 19
 The district court also denied Ozark's motion to amend its complaint to assert violations of 29 U.S.C. § 158(b)(4)(ii)(D), the Sherman Antitrust Act for conspiracy to restrain trade, and Missouri antitrust law. Having reversed the district court's order granting summary judgment in favor of Carpenters, we conclude the district court should permit Ozark to amend its complaint on remand. See Stoner v. State Farm Mut. Auto. Ins. Co., 780 F.2d 1414, 1417, 1419 (8th Cir.1986) (reversing summary judgment on one count and denial of leave to amend that count).
 
 
 20
 We thus reverse and remand to the district court for further proceedings consistent with this opinion.
 
 
 21
 BRIGHT, Senior Circuit Judge, dissenting.
 
 
 22
 I respectfully dissent. No reasonable jury could have returned a verdict in favor of the plaintiff, Ozark Interiors (Ozark), on the basis of Hall's references to "problems" and picketing. Hall's vague, ambiguous statements, which the Carpenters did not reinforce by pickets or a work stoppage, fail to rise to the level of prohibited secondary pressure under 29 U.S.C. § 158(b)(4)(ii)(B) (1988). The district court properly granted the defendant's motion for summary judgment.
 
 
 23
 We review the evidence in the record and apply established law to that evidence. In essence, Smock's deposition reveals that Hall indicated National would " 'have some problems' " if it used Ozark. I App. at 126-29, 147-50. Smock then concluded, on the basis of his experience in the industry, that "problems" meant pickets. Id. at 149-50.
 
 
 24
 During a conversation secretly tape-recorded by Ozark's attorney, the attorney asked Smock whether Hall said that "there would be picketing if he didn't have his union on there." "Correct," Smock responded. Id. at 225. During another tape-recorded conversation, Ozark's attorney paraphrased Hall as follows: "So what he's trying to do is say I'll picket you if you don't get some other contractor." Id. at 243. Smock replied, "Larry Hall hasn't told me that." Id. When the attorney pressed, suggesting that was the implication of Hall's words, Smock responded, "Well, he hasn't directly told me that, but all I want is no problems, period." Id. at 244.
 
 
 25
 As the Supreme Court has cautioned, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original); see Fed.R.Civ.P. 56(c). An issue of material fact exists if, under the substantive law, the disputed fact "might affect the outcome of the suit." 477 U.S. at 248, 106 S.Ct. at 2510. In addition, if a reasonable jury could return a verdict in favor of the nonmoving party, a genuine issue of material fact exists which precludes summary judgment. Id.
 
 
 26
 The secondary boycott provision of section 158(b)(4) prohibits a labor union from applying indirect economic pressure on an employer with whom it has a primary dispute by attempting to "threaten, coerce or restrain" a secondary employer to cease doing business with the primary employer. 29 U.S.C. § 158(b)(4)(ii)(B); see DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 578, 108 S.Ct. 1392, 1399, 99 L.Ed.2d 645 (1988). As the Supreme Court cautioned recently, the language of section 158(b)(4)(ii) is " 'nonspecific, indeed vague,' and should be interpreted with 'caution' and not given a 'broad sweep.' " DeBartolo, 485 U.S. at 578, 108 S.Ct. at 1399 (quoting NLRB v. Drivers, 362 U.S. 274, 290, 80 S.Ct. 706, 715, 4 L.Ed.2d 710 (1960)). Viewing the evidence in the light most favorable to Ozark, the district court assumed that Hall threatened National with both picketing and "problems."[1] This case thus turns on whether Hall's statements to Smock threatened, coerced or restrained National to cease doing business with Ozark within the meaning of section 158(b)(4)(ii)(B). They did not.
 
 
 27
 The specific language under the facts and circumstances of the case, not the subjective interpretation of the listener, determines whether statements constitute a threat of prohibited activity. E.g., Champion Exposition Servs., 292 N.L.R.B. No. 83, 1989 WL 223787 (N.L.R.B.) (Jan. 31, 1989); Apollo Dry Wall, 211 N.L.R.B. 291 (1974). The National Labor Relations Board (NLRB) has consistently held that vague allegations of "trouble" or "problems," without more coercive pressure such as picketing, do not violate the prohibition against secondary boycotts. See, e.g., Champion Exposition Servs., 292 N.L.R.B. No. 83 (union's ambiguous reference to unspecified "problem" not prohibited); Raymond Furlow, Inc., 239 N.L.R.B. 800 (1978) (union's statement that members have "problems" with use of non-union contractor not prohibited); Cleveland Electro Metals Co., 221 N.L.R.B. 1073 (1975) ("we may have to use an informational type picket" not prohibited); Apollo Dry Wall, 211 N.L.R.B. 291 (vague reference to "trouble" or "problems" not prohibited); Mautz & Oren Inc., 209 N.L.R.B. 410 (1974) (mutual agreement on desirability of avoiding "trouble" and a "picket" not prohibited in congenial conversation). But see Hylan Elec. Co., 204 N.L.R.B. 193 (1973) (union's threat of "trouble" on the job is prohibited when accompanied by pickets).
 
 
 28
 Like the NLRB, the federal courts have required a more coercive blend of conduct and speech than the statements at issue here before finding an unlawful application of secondary pressure. See, e.g., Limbach Co. v. Sheet Metal Workers Int'l Ass'n, 949 F.2d 1241, 1256-57 (3d Cir.1991) (en banc) (threat to cancel collective bargaining agreement for a prohibited secondary reason constitutes coercion within the meaning of the NLRA); Hirsch v. Building and Constr. Trades Council, 530 F.2d 298 (3d Cir.1976) (in context of bitter and protracted labor dispute, warning not to be "surprised if you have pickets on your plant tomorrow" is threat of illegal activity); NLRB v. Teamsters Local 445, 473 F.2d 249 (2d Cir.1973) (picketing and statement that "not a wheel will turn" is prohibited threat); NLRB v. International Bhd. of Elec. Workers, Local 453, 432 F.2d 965 (8th Cir.1970) (threat of pickets and picketing which brought about work stoppage is prohibited); Wells v. NLRB, 361 F.2d 737 (6th Cir.1966) ("Just don't act like a school kid. You know what I am talking about" and "we are going to have to stop this job" are prohibited threats where work stoppage took place); see also NLRB v. Local 825, A, B, C, D Int'l Union of Operating Eng'rs, 659 F.2d 379 (3d Cir.1981) (union's statement that it would "throw pickets around" worksite not a threat); Electro-Coal Transfer Corp. v. General Longshore Workers, 591 F.2d 284 (5th Cir.1979) (union's ambiguous reference to "serious problems" or "problems," without more, not a prohibited threat).
 
 
 29
 According to the teachings of Liberty Lobby, the record contains no issue of material fact. 477 U.S. at 248, 106 S.Ct. at 2510. The Carpenters neither picketed the job site nor engaged in a work stoppage. Hall simply made an ambiguous statement which Smock subjectively interpreted as a threat of unrest. Hall's vague reference to "problems" and "pickets," without more, fails to rise to the level of a prohibited threat, coercion or restraint within the meaning of section 158(b)(4)(ii). Thus, whether Hall threatened to picket is immaterial because it has no effect on the outcome of Ozark's suit under the substantive law. Id. See also Storer Communications, Inc. v. National Ass'n of Broadcast Employees and Technicians, 854 F.2d 144, 146-47 (6th Cir.1988) (summary judgment appropriate, even if the record contains evidence that the union threatened to picket, where the record contains no substantial evidence of a work stoppage or prohibited secondary pressure).
 
 
 30
 Nor does the record present a genuine issue of material fact. National responded to Hall by awarding the contract to a union subcontractor. Even when viewed in the light most favorable to the nonmoving party, however, the evidence fails to show that the Carpenters placed indirect economic pressure on Ozark by threatening, coercing or restraining National to cease doing business with Ozark. Absent evidence that the Carpenters applied illegal secondary pressure in the form of a picket line or a work stoppage, no reasonable jury could have returned a verdict in favor of Ozark solely on the basis of Hall's ambiguous statements. See Liberty Lobby, 477 U.S. at 248, 106 S.Ct. at 2510.
 
 
 31
 Thus, the dispute over Hall's reference to pickets and "problems" fails to create a genuine issue of material fact. The district court properly granted the defendant's motion for summary judgment. I would affirm.
 
 
 
 *
 The Honorable Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992
 
 
 [1]
 The majority reasons that the district court improperly resolved a disputed issue of material fact. Under the substantive law, however, this is not the case. Under the facts and circumstances of this case, where no pickets or work stoppages materialized, whether Hall vaguely threatened to picket National is not a material fact. See Storer Communications, Inc. v. National Ass'n of Broadcast Employees and Technicians, 854 F.2d 144, 146 (6th Cir.1988). Without evidence of more coercive, unambiguous conduct, such as the creation of a picket line at the job site, a vague reference to "problems" or picketing does not change the outcome. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Either way, Ozark cannot defeat the summary judgment motion