16 F.3d 1221
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Jesse K. SUMMERS, Plaintiff-Appellant,
v.
SFC ACQUISITION CORP., et al., Defendant-Appellee.
 No. 93-5389.
 United States Court of Appeals, Sixth Circuit.
 Feb. 3, 1994.
 
 Before: NELSON and NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a hybrid Sec. 301/unfair representation action brought under federal labor law by a member of a collective bargaining unit. See 29 U.S.C. Sec. 185. The plaintiff, whose job was eliminated in 1990 as part of a reduction in force, claims that the employer violated a collective bargaining agreement by refusing to allow him to exercise "bumping" rights against a less senior janitorial employee. He further claims that his local union violated its duty of fair representation by refusing to seek arbitration on his behalf.
 
 
 2
 In making their respective decisions, the employer and the union relied upon a 1984 side agreement that committed the employer to maintaining the existing janitorial staff notwithstanding the contracting out of certain janitorial work. That agreement and a later arbitrator's decision were interpreted by both defendants as protecting the janitorial employee from being bumped, notwithstanding that the side agreement had not been ratified by the union membership and notwithstanding the absence of any reference to the side agreement in a subsequent collective bargaining agreement purporting to cover all matters affecting conditions of employment.
 
 
 3
 The district court granted summary judgment to the defendants, holding that the employer had not violated the collective bargaining agreement. For the reasons stated below, we shall affirm the district court's judgment.
 
 I.
 
 4
 Defendant SFC Acquisition Corp., d/b/a Samsonite Furniture Company, operates a plant in Murfreesboro, Tennessee. The plaintiff, Jesse K. Summers, worked at the plant for many years. His employment was covered by a collective bargaining agreement between Samsonite and Local # 779 of the United Rubber, Cork, Linoleum & Plastic Workers of America, AFL-CIO.
 
 
 5
 In 1984 Samsonite decided to move its corporate headquarters to the Murfreesboro facility. The office staff nearly doubled as a result, and the office was expanded and remodeled. For the first few months following the renovation, two janitors on the second shift were given responsibility for cleaning the expanded offices. Samsonite decided that the cleaning of the office areas was not up to par and that it would be desirable to have the office janitorial work performed by an outside contractor. Because janitorial employees were covered by the collective bargaining agreement, Samsonite approached the union before contracting out the work in question.
 
 
 6
 In June of 1984 Samsonite and Local # 779 negotiated a one-page agreement on the matter. The agreement was signed by Leon Morris, the president of Local # 779, and Gary A. Hall, the director of human resources for Samsonite. The operative portion of the agreement read as follows:
 
 
 7
 "I. The Company will subcontract office janitorial maintenance.
 
 
 8
 II. The Company will maintain the existing janitorial staff in janitorial jobs.
 
 
 9
 III. It is further agreed that the execution of this agreement shall not constitute precedent on either party in the future."
 
 
 10
 With the signing of the new agreement, Samsonite let a contract for performance of the office janitorial work.
 
 
 11
 A new collective bargaining agreement was negotiated in 1986, to be renewed automatically every year unless specified notice were given. Section 19(d) of the new agreement stated that any reduction in force within a department would be made on the basis of seniority. The section then established bumping rights by providing that an employee subject to a job reduction
 
 
 12
 "shall be allowed to select a job from the available jobs within the department, if any, provided he has the mental and physical ability to perform the job, or he shall be assigned to the job of that employee in the department who has the least seniority and who is not in a key job, provided that the reduced employee has more seniority than such employee and provided further that the reduced employee has the mental and physical ability to do the work available."
 
 
 13
 Section 32 of the new agreement provided as follows:
 
 
 14
 "The Union and the Employer agree that this Agreement is intended to cover all matters affecting wages, hours, and other terms and all conditions of employment and similar or related subjects, and that during the term of this Agreement, neither the Employer nor the Union will be required to negotiate on any further matters affecting these or any other subjects not specifically set forth in this Agreement."
 
 
 15
 In 1987, while the 1986 agreement was in effect, Samsonite reduced its work force due to poor business conditions. The jobs of two janitors were eliminated, and the janitors were advised that to retain employment they would have to exercise their seniority and transfer to production jobs under Sec. 19. The two had been on the payroll in June of 1984 when the janitorial agreement was negotiated, and they believed that the agreement protected their positions. Accordingly, they took the production jobs under protest and filed a grievance that was ultimately referred to an arbitrator.[1]
 
 
 16
 Samsonite and Local # 779 stipulated in the arbitration proceedings that the 1984 agreement was part of the collective bargaining agreement. The arbitrator concluded, accordingly, that a violation of the 1984 agreement would constitute a violation of the collective bargaining agreement. The arbitrator further concluded that the 1984 agreement remained effective as long as the company subcontracted the office janitorial work. Thus "as to any of the janitorial staff who were so classified on June 8, 1984, the Company would first have to terminate the subcontracting arrangement before reducing any of these employees." Because the company had not terminated its arrangement with the outside contractor, the arbitrator ordered the two employees to be restored to their jobs.
 
 
 17
 Another reduction in force occurred in March of 1990. At that time Mr. Summers was advised by the employer that his general maintenance position was being eliminated. He was told he would have to take the junior job in the maintenance department, that of Peggy Elliot, or be placed in a production job in the factory. Mr. Summers chose to bump Ms. Elliot, and he performed her duties for two days. Gary Hall, the employer's director of human resources, then met with the plaintiff and advised him that he could not stay in the janitor's position because the janitors' jobs were protected by an arbitration decision. Mr. Summers met with union president Morris the following day and was granted the option of taking a voluntary layoff. He chose the voluntary layoff.
 
 
 18
 Mr. Summers then filed a grievance, asking that Samsonite honor Sec. 19(d) of the collective bargaining agreement and allow him to bump the junior employee. On April 6, 1990, a "Step A" meeting was held, as provided for in the collective bargaining agreement. Mr. Summers says it was here that he first became aware of the 1984 agreement. A "Step B" meeting was held April 17. At this meeting Mr. Summers reported that he had telephoned the arbitrator to learn more about his decision, an action that subsequently led to "a shouting match" between Summers and union president Morris. Mr. Summers says he suggested that the arbitrator be asked to clarify his prior decision. Although Gary Hall agreed, Mr. Summers says, Leon Morris refused to place a call to the arbitrator, explaining that he had been advised against it by union officials and counsel.
 
 
 19
 Gary Hall and Leon Morris then wrote a joint letter to the arbitrator. In the letter they noted that they had "refused to allow [Mr. Summers] to bump a janitor to a production job" and "we need to know if we acted contractually within the confines of your earlier decision" in view of Mr. Summers' contention that the prior decision "did not protect the individuals, but rather ... the jobs."
 
 
 20
 On May 17, 1990, Mr. Summers made a request for arbitration under the collective bargaining agreement. Unbeknownst to him, he says, Leon Morris already had requested arbitration of the matter on May 14, 1990. (Mr. Morris says in his affidavit that he did so to preserve any time limitations.) Mr. Morris answered the plaintiff's request for arbitration by letter of May 24, writing, "you will be informed of the union's decision when it is made." Morris also informed Mr. Summers that the arbitrator had been contacted about the prior arbitral decision.
 
 
 21
 An "Interpretation of Award" was issued by the arbitrator on June 29, 1990. The interpretation said that Samsonite and Local # 779 "acted in accordance with the special [1984] agreement and my Award interpreting that agreement." The arbitrator further noted that his prior decision had applied the terms of the 1984 agreement in which "the union was given, on behalf of the existing janitorial staff, absolute job security for those employees." (Emphasis supplied.)
 
 
 22
 Based on this interpretation, the union decided not to go to arbitration. Mr. Summers says he attempted to appeal this decision to the executive board of Local # 779 but was prevented from doing so by Leon Morris. Mr. Summers then filed unsuccessful complaints with the National Labor Relations Board and the Equal Employment Opportunity Commission. The instant complaint was filed in federal district court on November 16, 1990.
 
 
 23
 Both the employer and the union moved for summary judgment, and the motions were referred to a magistrate judge. In view of the clear language in Sec. 19(d) of the collective bargaining agreement, the magistrate judge concluded, an issue of fact existed as to whether the employer had violated the agreement. An issue of fact was also found to exist as to the union's breach of its duty of fair representation in choosing not to take the grievance to arbitration. Although the magistrate judge found no genuine issue as to the plaintiff's charge of racial discrimination in refusing to arbitrate (Mr. Summers is black), he did conclude that there were material issues as to whether the union had acted arbitrarily in relying on the 1984 agreement and the subsequent arbitration decision. The magistrate judge pointed out that although it had the effect of modifying the collective bargaining agreement, the 1984 agreement had never been ratified by the union membership. In view of this, he continued, a fact finder could conclude that the union's reliance on the agreement was irrational. Further, according to the magistrate judge, the plaintiff's showing by affidavit that he had attempted to appeal to the local's executive board created a material factual dispute as to his failure to exhaust union procedures. The magistrate judge recommended denial of the motions.
 
 
 24
 The district court rejected the magistrate judge's recommendation and granted summary judgment to both defendants. The 1984 agreement was a valid modification of the collective bargaining agreement, the court found, and ratification was not obligatory. Because the company had not violated the agreement, the court concluded the action must fail as to both parties. This appeal, brought by Mr. Summers pro se, followed.
 
 II
 
 25
 "When reviewing a lower court's grant of summary judgment under rule 56 of the Federal Rules of Civil Procedure, we apply a de novo standard of review, making all reasonable inferences in favor of the party who did not move for summary judgment." Storer Communications, Inc. v. National Ass'n of Broadcast Employees and Technicians, 854 F.2d 144, 146 (6th Cir.1988) (citations omitted). Summary judgment is proper
 
 
 26
 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.
 
 
 27
 A lawsuit such as the present one, brought against an employer for breach of a collective bargaining agreement and against a union for breach of the duty of fair representation, is a "hybrid Sec. 301/fair representation" claim, amounting to a challenge to the settlement of a dispute under the collective bargaining agreement. DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 165 (1983). To recover against either the company or the union in such a suit, the plaintiff must show both that the employer violated the collective bargaining agreement and that the union violated its duty of fair representation. Bagsby v. Lewis Bros., Inc., 820 F.2d 799, 801 (6th Cir.1987), citing Hines v. Anchor Motor Freight Co., 424 U.S. 554, 570-571 (1976).
 
 
 28
 Based on the 1984 side agreement, the district court concluded that Samsonite did not violate the collective bargaining agreement by denying the plaintiff the right to bump the junior employee from her position. Ratification of a side agreement by the union membership is not always necessary. Central States S.E. and S.W. Areas Pension Fund v. Kraftco, Inc., 799 F.2d 1098, 1112 (6th Cir.1986) (en banc), cert. denied, 479 U.S. 1086 (1987). In Central States we concluded that a union president had apparent authority to enter a letter agreement, noting that " 'an employer may rely upon the apparent authority of the Union representatives to conclude an agreement, where there is a basis for such reliance.' " Id., quoting NLRB v. Truckdrivers, Chauffeurs & Helpers, Local Union No. 100, 532 F.2d 569, 571 (6th Cir.), cert. denied, 429 U.S. 859 (1976).
 
 
 29
 There was apparent authority here for the 1984 side agreement. Although it might appear, in light of Sec. 32 of the 1986 collective bargaining agreement, that the new contract was intended to supersede the side agreement, that was not the parties' intent. In the 1987 arbitration proceedings, as we have seen, the parties stipulated that the side agreement was still in effect. If the side agreement was not still in effect, the stipulation revived it, thereby amending the 1986 agreement to the extent necessary to effectuate the subjective intent of the contracting parties. The employer, again, was entitled to assume that the union representatives had authority to do this. Accordingly, we think that the district court was correct in concluding that Samsonite did not violate the collective bargaining agreement by applying the terms of the 1984 agreement.
 
 
 30
 Mr. Summers' arguments do not convince us otherwise. He asserts that both Gary Hall and Leon Morris knew of the invalidity of the agreement on "subcontracting," and in this connection he points to documents relating to denial of a subsequent grievance. Our review of those documents indicates they have no relevance to the instant proceeding. In any event, they will not be considered for the first time on appeal. Taft Broadcasting Co. v. United States, 929 F.2d 240, 243-244 (6th Cir.1991). Mr. Summers further argues that there were seven janitors at the time of the contracting out of the office janitorial work, whereas now there are four. We do not believe this fact, if true, undercuts the conclusion that the collective bargaining agreement was properly applied with respect to the plaintiff and Peggy Elliot, whose position was considered in the prior arbitration decision. Mr. Summers' remaining arguments, in which he invokes the magistrate judge's report and recommendation, are also without merit.
 
 
 31
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 One of those janitors, Peggy Elliot, is the same employee the plaintiff in the instant case attempted to bump when he was faced with job reduction