_____

No. 95-1280

_____

Jane Donaho,                          *
                                      *
          Appellant,                  *
                                      *  Appeal from the United States
     v.                               *  District Court for the
                                      *  District of Minnesota.
FMC Corporation, a Delaware           *
corporation, as Plan                  *
Administrator of the FMC              *
Long-Term Disability Plan,            *
                                      *
          Appellee.                   *


_____

Submitted:  October 18, 1995

Filed:  January 31, 1996
_____

Before BOWMAN, FLOYD R. GIBSON, and BRIGHT, Circuit Judges.

_____

BRIGHT, Circuit Judge.


     Jane Donaho appeals a district court order granting summary
judgment in favor of her employer, FMC Corporation (FMC), in this
suit to enforce her rights under an ERISA health benefits plan.
See 29 U.S.C. § 1132(a)(1)(B).  Under a deferential standard of
review, the district court upheld FMC's decision to deny Donaho's
application for long-term disability benefits under FMC's employee-
funded disability plan.  Donaho contends that the denial of
benefits is unreasonable and not supported by substantial evidence.
Because we conclude that FMC's denial of benefits to Donaho, at
least until October 1993, was an abuse of discretion, we reverse
and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jane Donaho was hired as a full-time employee of FMC Corporation in 1990. She held the position of senior software engineer at FMC's Naval Systems Division, where her duties included planning, designing and writing computer software with military applications. Donaho's position at FMC was demanding, requiring that she possess a very high level of analytical ability and communication skills to enable her to design complex software, solve difficult technical problems and provide assistance to project leaders.

Donaho continued working full time at FMC until July 14, 1992, when she collapsed at work. Recurrent depression caused her collapse and subsequent inability to work. Donaho underwent psychological treatment with her psychotherapist, Dr. Patricia Aletky, and saw a psychiatrist, Dr. Deanna Bass, who prescribed Prozac for the illness. In November 1992, Dr. Aletky approved Donaho for part-time work at FMC; however, Donaho's condition worsened after two weeks and she could not continue working.

FMC maintains an employee-funded benefits plan which includes both short-term and long-term disability benefits. During the initial period of her illness, Donaho collected short-term disability benefits.[1] On January 12, 1993, when these benefits expired, Donaho applied for long-term disability (LTD) benefits. Under FMC's LTD plan, employees are entitled to LTD benefits if they are totally disabled, providing that they have satisfied a six-month qualifying period. For the first two years of disability, an employee is considered totally disabled when she is

---

[1]To be eligible for short-term benefits, an employee must have an illness so severe that she is unable to "perform the necessary duties of [her] job or another job for which [she was] or could be qualified by virtue of experience, training or education." Appellant's App. at A-184.

"wholly and continuously unable to perform every duty of [her] own job with FMC." Appellant's App. at A-150.

To evaluate Donaho's initial application for LTD benefits, and pursuant to standard policy, the plan administrator retrieved Donaho's personal, vocational and medical records. Dr. Richard Zaloudek, the plan administrator's medical director and consulting psychiatrist, reviewed Donaho's entire record and determined that she was not totally disabled. Specifically, Dr. Zaloudek reviewed Dr. Aletky's patient notes and determined that Donaho had shown overall improvement since February 1993 and that her depression had improved in late 1992. Further, Dr. Zaloudek found no evidence of "cognitive deficits or psychomotor abnormalities." Dr. Zaloudek approved of this "not totally disabled" evaluation prior to April 2, 1993.

In addition to the medical review, FMC director of employee benefits Kenneth J. Morrissey discovered that Donaho had been assisting in the preparation of, and actively participating in, professional meetings and volunteer projects since late 1992 (although Donaho spent only a few hours per month on these activities). On the basis of this information, plus the medical review, Morrissey rejected Donaho's application for LTD benefits on April 2, 1993.

On May 27, 1993, Donaho filed an appeal with the plan administrator. In support of her appeal, Donaho included a letter from Dr. Aletky (dated May 25, 1993) that stated that Donaho was not currently able to perform every duty of her own job and that a return to full-time employment would create a "serious likelihood of relapse."[2] Appellant's App. at A-111. Donaho later sent to the

_____

[2]Dr. Aletky's May 25 letter further noted that Donaho "has had no remission of her depression since its onset" and that she "was not able to perform every duty of her job at FMC on a sustained, regular basis at any point [between July 1992 and May

-3-

plan administrator a letter from Dr. Bass (dated June 23, 1993) which stated that Donaho's symptoms of impaired concentration and fatigue would "make it extremely difficult to attend consistently to the details that are involved in [Donaho's] work." Appellant's App. at A-104. Bass further noted that Donaho's depression would "most certainly interfere" with her ability to perform every duty of her job on a regular, sustained basis. Id. Finally, Donaho submitted an evaluation performed by Dr. Bass on April 26, 1993. In this evaluation, Dr. Bass concluded that "the patient has not returned to normal baseline mood and in fact would not be considered in partial remission since mood would plummet . . . if stress increased . . . ."[3] Appellant's App. at A-123.

Dr. Zaloudek, having reviewed the letters of Drs. Bass and Aletky, concluded on July 1, 1993 that "[s]ince the new evidence from Dr. Bass and Dr. Aletky are in close agreement, I would accept their conclusions. It appears now that the client did not have sufficient improvement to function appropriately as a computer software engineer." Appellant's App. at A-106.

However, after Dr. Zaloudek was contacted by the plan administrator, he reversed course and stated that Dr. Bass and Dr. Aletky did not provide "sufficient objective measurement of attention span, memory and concentration . . ." (Appellant's App. at A-101), and he recommended that a complete independent medical examination (IME) be performed.

---

1993]." Appellant's App. at A-110.

[3]In this evaluation, Dr. Bass also noted that, while Donaho did not exhibit "abnormalities of speech or psychomotor behavior," (Appellant's App. at 122), her fatigue increased during the months of January, February and March 1993. Further, while Donaho did not seem "severely depressed" during this time period, her depression worsened near the end of March 1993.

-4-

Donaho's IME was conducted on September 1, 1993 by Dr. Abuzzahab. He determined that Donaho suffered from a mild but recurrent depression that would be amenable to drug treatment. Dr. Abuzzahab concluded that, while Donaho had only a limited ability to complete assigned tasks and to function independently, she "<u>should</u> respond to the suggested pharmacologic approaches, and thus she will be able to resume working" (emphasis added). Appellant's App. at A-51. Dr. Abuzzahab did <u>not</u> state that Donaho had already recovered; rather, his conclusions indicate that Donaho was still disabled but could recover in the future. His report was forwarded to the plan administrator on October 1, 1993.

Dr. Zaloudek reviewed Dr. Abuzzahab's findings. Dr. Zaloudek noted that "Dr. Abuzzahab did not find any significant cognitive problems. [Donaho's] memory was fine." He concluded that "while [Donaho] <u>has not completely recovered</u>, there is no objective evidence to show marked impairment in attention, memory, and concentration. . . . [She is] not totally prevent[ed] from carrying out her software engineer duties as routinely expected." (Emphasis added). Appellant's App. at A-49. This report was dated October 20, 1993.

In addition to these medical reports, Donaho was requested to execute a release of information permitting FMC to obtain and review her application files from the Social Security disability program. While Donaho's file revealed that she had been denied Social Security benefits,[4] one finding is instructive: Donaho was able to "understand, remember, and follow through with moderately difficult instructions." Appellant's App. at A-96.

---

[4]To be eligible for benefits under Social Security, "you must have a severe impairment, which makes you unable to do your previous work or any other substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505(a) (1992). This standard is much more restrictive than FMC's LTD benefits standard, which requires for eligibility that a person be unable to perform "every duty of [her] own job with FMC."

Morrissey reviewed all of the materials received and prepared a report for the Employee Benefits Welfare Committee. The Committee met on January 6, 1994, and it determined that Donaho was not "totally disabled" within the meaning of the plan. Specifically, the Committee found that "by late 1992 Ms. Donaho could perform all of the duties of her job as a senior software engineer on a full-time basis." Appellant's App. at A-118. Accordingly, Donaho was denied all LTD benefits.

After the Committee rejected Donaho's application for LTD benefits, Donaho filed suit under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), claiming that LTD benefits were wrongfully denied her. The district court granted summary judgment in favor of the defendants, determining that the Committee's decision to withhold LTD benefits was neither "extraordinarily imprudent" nor "extremely unreasonable." This appeal followed.

## II.  STANDARD OF REVIEW

We review a grant of summary judgment de novo. LeBus v. Northwestern Mut. Life Ins. Co., 55 F.3d 1374, 1376 (8th Cir. 1995). A court considering a motion for summary judgment must view all facts in the light most favorable to the non-moving party and give to the non-moving party the benefit of all reasonable inferences that can be drawn from the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). While a party is entitled to summary judgment if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986), summary judgment is inappropriate when the record permits reasonable minds to draw conflicting inferences about a material fact. Id. at 250-51; Ozark Interiors, Inc. v. Local 978 Carpenters, 957 F.2d 566, 569 (8th Cir. 1992).

While ERISA itself does not specify the standard of review, see 29 U.S.C. § 1132(a)(1)(B), the Supreme Court has held that a reviewing court should apply a de novo standard of review unless the plan gives the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If such discretionary authority is given by the plan, we review the plan administrator's decision only for abuse of discretion.[5] Id.; see also Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 571 (8th Cir. 1992) (Cox I), aff'd after remand, 13 F.3d 272 (8th Cir. 1993) (Cox II).

FMC's employee health benefits plan grants explicit discretionary interpretive authority to the plan administrator:

> FMC, as Plan Administrator, has discretionary authority to construe and interpret the terms of the Plan, including, but not limited to, deciding all questions of eligibility. . . .

Appellant's App. at A-162. We agree with the district court that this plan language requires that courts apply a deferential standard of review to the Committee's plan interpretation and fact-based disability determinations. We review de novo a district court's application of the deferential standard of review. Bolling v. Eli Lilly and Co., 990 F.2d 1028, 1029 (8th Cir. 1993).

---

[5]Some courts continue to use the pre-Bruch formulation of "arbitrary and capricious," see, e.g., Perry v. United Food & Com. Workers Dist. Unions, 64 F.3d 238, 242 (6th Cir. 1995); Finley v. Special Agents Mut. Benefit Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992); Madden v. ITT Long Term Dis. Plan, 914 F.2d 1279, 1285 (9th Cir. 1990), cert. denied, 498 U.S. 1087 (1991), rather than abuse of discretion. While this may be a "distinction without a difference," Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 572 n.3, aff'd after remand, 13 F.3d 272 (8th Cir. 1993); see also Wildbur v. ARCO Chemical Co., 974 F.2d 631, 635 n.7 (5th Cir. 1992) (noting only a "semantic, not a substantive, difference" between the two terms); Taft v. Equitable Life Assur. Soc., 9 F.3d 1469, 1471 n.2 (9th Cir. 1993), we will use the "abuse of discretion" formulation.

This deferential standard "does not permit a reviewing court to reject a discretionary trustee decision with which the court simply disagrees[.]" Cox I, 965 F.2d at 572. In defining the scope of deferential review, however, this circuit has used several different formulations. In some cases we have upheld an administrator's decision under a deferential standard of review if the decision was supported by "substantial evidence," see, e.g., Short v. Central States, S.E. & S.W. Areas Pen. Fund, 729 F.2d 567, 571 (8th Cir. 1984); in other cases we have required that the decision be "reasonable," see, e.g., Cox II, 13 F.3d at 274; Finley v. Special Agents Mut. Benefit Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992); in still other cases we have only required that the decision not be "extraordinarily imprudent or extremely unreasonable," see, e.g., Lickteig v. Business Men's Assur. Co. of America, 61 F.3d 579, 583 (8th Cir. 1995); Lutheran Med. Center v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan, 25 F.3d 616, 621 (8th Cir. 1994); Bernards v. United of Omaha Life Ins. Co., 987 F.2d 486, 488 (8th Cir. 1993).

The "extraordinarily imprudent or extremely unreasonable" language, first stated in Cox I, 965 F.2d at 572 (quoting George G. Bogert & George T. Bogert, The Law of Trusts and Trustees § 560, at 201-04 (rev. 2d ed. 1980)), has found some current favor in this circuit. We note, however, that the Cox I court cited this language as an example of abuse of discretion and not as a threshold level for review.[6] While "extraordinarily imprudent or extremely unreasonable" may be a helpful example in certain fact situations, it is less instructive as an across-the-board test for determining when a plan administrator's disability determination is

---

[6]The Cox I court noted that "'if the action of the trustee is extraordinarily imprudent or extremely unreasonable, the court is likely to find that there has been an abuse of discretion.'" Cox I, 965 F.2d at 572 (quoting George G. Bogert & George T. Bogert, The Law of Trusts and Trustees § 560, at 201-04 (rev. 2d ed. 1980).

an abuse of discretion.  From our examination of the cases, we believe the proper inquiry is whether the plan administrator's decision was reasonable; i.e., supported by substantial evidence. The pejorative adjectives of "extraordinarily" (imprudent) or "extremely" (unreasonable) are encompassed in a reasonableness test.

The starting point for our analysis is the Supreme Court opinion in Bruch.  As the Court noted, "ERISA abounds with the language and terminology of trust law. . . .  In determining the appropriate standard of review for actions under § 1132(a)(1)(B), we are guided by principles of trust law."  Bruch, 489 U.S. at 110-11.

In defining an abuse of discretion, the Restatement (Second) of Trusts notes that "the court will not interfere unless the trustee in exercising or failing to exercise the power . . . acts beyond the bounds of a reasonable judgment."  Restatement (Second) of Trusts § 187, cmt. e (1959).  This reasonableness standard has generally been followed by commentators.  See, e.g., 3 W. Fratcher Scott on Trusts § 187, at 14-15 (4th ed. 1988) (trustee abuses her discretion when she "acts outside the bounds of a reasonable judgment"); Bogert & Bogert, supra, § 559 at 169-71 (where trustee given power to construe disputed terms, her decision will not be disturbed if reasonable), quoted in Bruch, 489 U.S. at 111. Several circuits have adopted a reasonableness standard as well.[7]

---

[7]See, e.g., Crosby v. Crosby, 986 F.2d 79, 83 (4th Cir. 1993) (under abuse of discretion standard, "a court should not disturb the administrator's decision if reasonable"); Auto Club Ins. Ass'n v. Health and Welfare Plans, Inc., 961 F.2d 588, 593 (6th Cir. 1992) (same); Krawczyk v. Harnischfeger Corp., 41 F.3d 276, 279 (7th Cir. 1994) (committee decision will be upheld under abuse of discretion standard if the decision "offers a reasoned explanation, based on the evidence"); Cox v. Mid-America Dairymen, Inc., 13 F.3d 272, 274 (8th Cir. 1994) (court will affirm a "reasonable interpretation"); Jett v. Blue Cross and Blue Shield of Alabama, 890 F.2d 1137, 1139 (11th Cir. 1989)

We are aware that the word "reasonable" possesses different connotations.[8]  As in Cox I, we reject any definition of reasonableness that would "permit a reviewing court to reject a discretionary trustee decision with which the court simply disagrees[.]"  Cox I, 965 F.2d at 572.  Rather, the proper reading of "reasonable" in the context of trusts and ERISA is "not immoderate or excessive"; that is, a trustee decision is reasonable if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision.  Put another way, the committee's decision need not be the only sensible interpretation, "so long as its decision 'offer[s] a reasoned explanation, based on the evidence, for a particular outcome.'  If the committee's decision offers a reasonable explanation, their decision should not be disturbed even if another reasonable, but different, interpretation may be made." Krawczyk v. Harnischfeger Corp., 41 F.3d 276, 279 (7th Cir. 1994) (citation omitted).[9]

---

("[T]he function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made.");  Block v. Pitney Bowes Inc., 952 F.2d 1450, 1454 (D.C. Cir. 1992) ("The essential inquiry here, in short, is . . . [d]id the Committee reasonably construe and apply the Pitney Bowes Plan in Ralph Block's case?").

[8]Reasonableness can mean either "fair, proper, just, moderate" or "not immoderate or excessive."  Black's Law Dictionary (6th ed. 1991).

[9]While Krawczyk deals with plan interpretation rather than plan application, its reasoning applies in both situations.  See, e.g., Block v. Pitney Bowes Inc., 952 F.2d 1450, 1454 (D.C. Cir. 1992) ("The essential inquiry here . . . is [d]id the Committee reasonably construe and apply the Pitney Bowes Plan in Ralph Block's case?") (emphasis added).

When determining whether an administrator's plan interpretation is reasonable, this circuit uses the five-factor test enunciated in Finley, 957 F.2d at 621.  Where, however, an administrator evaluates facts to determine the plan's application in a particular case, such as here, the substantial evidence test governs our review.

In evaluating whether a plan administrator's fact-based disability determinations are reasonable, courts should look to whether the decision is supported by substantial evidence.[10] Thus, under the abuse of discretion standard of review, the district court, in the absence of bad faith or conflict of interest, may overturn a decision of the plan administrator only if it is "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (citation omitted); see Sandoval v. Aetna Life and Cas. Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992) (adopting substantial evidence standard).

Our conclusion that "substantial evidence" is only a quantified reformulation of reasonableness has support in the case law. Under the substantial evidence standard of review, as under the reasonableness standard, "so long as the [plan committee's] findings are reasonable, they may not be displaced on review even if the court might have reached a different result had the matter been before it de novo." Laro Maintenance Corp. v. NLRB, 56 F.3d 224, 229 (D.C. Cir. 1995). See also Bates v. Chater, 54 F.3d 529, 532 (8th Cir. 1995) (where inconsistent conclusions may be drawn from evidence as a whole, decision must be upheld under "substantial evidence" standard). Under both standards, a plan administrator's decision must be upheld if a reasonable mind would find that the decision was adequately supported by the evidence on record.[11]

---

[10]Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). In quantifiable terms, "[s]ubstantial evidence requires 'more than a scintilla but less than a preponderance.'" Sandoval v. Aetna Life and Cas. Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992) (citation omitted).

[11]That reasonableness and substantial evidence are really two formulations of the same standard is made more evident by comparing the pre-Bruch "arbitrary and capricious" standard to

## III.  ABUSE OF DISCRETION

We apply the foregoing standard to the issues here.  Under FMC's LTD plan, an eligible participant is entitled to LTD benefits after a six-month qualifying period of total disability.  Because Donaho first became disabled in July 1992, her qualifying period did not end until January 1993.  The benefits committee, however, concluded that "by late 1992 Ms. Donaho could perform all of the duties of her job as a senior software engineer on a full-time basis," (Appellant's App. at A-118), and it thus denied Donaho's application for LTD benefits.  This determination lacks support in the record.

Certain facts are central to our holding that the plan administrator acted unreasonably.  On July 1, 1993 Dr. Zaloudek accepted the conclusions of Dr. Bass and Dr. Aletky that Donaho had not completely recovered.  Then, after talking with the plan administrator, Dr. Zaloudek reversed course and ordered a complete IME for Donaho.  The IME, performed by Dr. Abuzzahab, indicated that Donaho suffered from a continuing disability which could be overcome by medication.  Dr. Zaloudek, who was not a treating physician, then misconstrued Dr. Abuzzahab's findings.  In his October 20, 1993 report, Dr. Zaloudek first stated that Donaho had not completely recovered and then, without more, he leapt to the

---

the post-Bruch "abuse of discretion" standard.  Under the deferential arbitrary and capricious standard, courts would uphold a plan administrator's decision if it was supported by substantial evidence.  See Short v. Central States, S.E. & S.W. Areas Pen. Fund, 729 F.2d 567, 571 (8th Cir. 1984); Holt v. Winpisinger, 811 F.2d 1532, 1535 (D.C. Cir. 1987).  Under an abuse of discretion standard, courts should uphold an administrator's decision if reasonable.  As noted above, courts have not discerned a difference between "arbitrary and capricious" and "abuse of discretion."  See supra note 5.  Thus it stands to reason that the tests for each standard should also be substantially equivalent.

conclusion that Donaho was "not totally prevent[ed] from carrying out her software engineer duties. . . ." Appellant's App. at A-49.

The unreasonableness of a plan administrator's decision can be determined by both the quantity and quality of the evidence supporting it. We find the evidence supporting the decision lacking on both counts. First, the evidence indicating continuing disability was overwhelming.[12]

Second, the only evidence supporting the committee's decision,[13] Dr. Zaloudek's October 20, 1993 evaluation, is not as

---

[12]All three examining physicians determined that Donaho was totally disabled. Dr. Abuzzahab determined that Donaho had only a limited ability to complete assigned tasks and function independently and he clearly indicated that Donaho was still disabled as of October 1, 1993. Dr. Aletky, a treating physician, stated that Donaho "has had no remission of her depression since its onset" and that she "was not able to perform every duty of her job at FMC on a sustained, regular basis at any point [between July 1992 and May 1993]." Appellant's App. at A-110. Dr. Bass, also a treating physician, stated that Donaho's symptoms of impaired concentration and fatigue would "make it extremely difficult to attend consistently to the details that are involved in [Donaho's] work," (Appellant's App. at A-104), and she concluded in her April evaluation that "the patient has not returned to normal baseline mood and in fact would not be considered in partial remission since mood would plummet . . . if stress increased. . . ." Appellant's App. at A-123.

[13]The committee erroneously relied on the Social Security Administration's rejection of Donaho's application for Social Security disability benefits. The Social Security Administration concluded that Donaho could "understand, remember, and follow through with moderately difficult instructions" (Appellant's App. at A-96), and thus she could function as a "data entry operator." This does not support the committee's decision that Donaho could function as a computer software engineer, a very demanding occupation.

The committee also erroneously relied on evidence of Donaho's personal life, including social activities. That she can get out of bed, take care of herself, interact with others, and spend a few hours per month on professional activities (most often only attending functions and perhaps making a few phone calls) does not demonstrate that she can resume working at a

-13-

determinative as the committee would have us believe.  Dr. Zaloudek
was a reviewing physician; he never examined Donaho.  While this
fact alone is not dispositive, it lessens the weight which the
committee should have accorded Dr. Zaloudek's opinion.  We have
held, in Social Security cases, that a reviewing physician's
opinion is generally accorded less deference than that of a
treating physician, Thompson v. Bowen, 850 F.2d 346, 349 (8th Cir.
1988), and we apply this rule in disability cases under ERISA as
well.  Certainly where the reviewing physician's conclusions are
contradicted by an examining physician and two treating physicians,
reliance on the reviewing physician's conclusions "seems especially
misplaced" and constitutes an abuse of discretion.  See Totz v.
Sullivan, 961 F.2d 727, 730 (8th Cir. 1992) (ALJ erred in crediting
testimony of reviewing physician rather than testimony of three
treating physicians).

Further, while Dr. Zaloudek's opinions have been largely
supportive of the committee's findings, they have not always been
consistent.  As we have already observed, on July 1, 1993, Dr.
Zaloudek agreed with Dr. Bass and Dr. Aletky that "[i]t appears now
that the client did not have sufficient improvement to function
appropriately as a computer software engineer."  Appellant's App.
at A-106.  Only after being contacted by the plan administrator did
he reverse course and order an IME.  This change of opinion should
also lessen the weight that the committee gave to Dr. Zaloudek's
opinion.

In prior cases, we have held that where there is a conflict of
opinion, the plan administrator does not abuse his discretion in
finding that the employee is not disabled.  See Cox II, 13 F.3d at
275.  However, where the administrative decision lacks support in
the record, or where the evidence in support of the decision does

stressful and demanding job.

-14-

not ring true and is so overwhelmed by contrary evidence, the administrative decision is unreasonable and will not stand. That is the case here.


## IV.  CONCLUSION

Having determined that the committee's denial of disability benefits was an abuse of discretion, we vacate the grant of summary judgment and remand to the district court.  The district court should in turn remand this case to the plan administrator and require the plan administrator to acknowledge liability at least until October 1, 1993, and for such additional time as the record may show that Donaho's condition remained the same or worsened after October 1993.  The administrator of the plan should permit additional evidence to determine the duration of the disability, if any, following October 1, 1993.

A true copy.

Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.