Melvin COCHRAN, Plaintiff,

v.

TRAVELERS' INSURANCE COMPANY, Defendant.

No. 1:96CV166 FRB.

United States District Court,
E.D. Missouri,
Southeastern Division.

May 14, 1997.

Michael A. Moroni, Bloomfield, MO, for Melvin Cochran.

Ann E. Buckley, Armstrong and Teasdale, St. Louis, MO, for Travelers' Ins. Co.

### MEMORANDUM AND ORDER

BUCKLES, United States Magistrate Judge.

Presently pending before the Court is defendant Travelers' Insurance Company's Motion for Summary Judgment (filed January 17, 1997/Docket No. 10). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Melvin Cochran brings this action pursuant to the Employee Retirement In-

come Security Act ("ERISA"), 29 U.S.C. § 1132, claiming that defendant wrongfully denied him long-term disability benefits under the employee welfare benefit plan ("Plan") provided by his employer, Fleming Company, Inc.

Defendant now moves for summary judgment claiming there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Specifically, defendant contends that its decision to deny long-term disability benefits was reasonable and not arbitrary and capricious, and thus that plaintiff cannot recover on his claim. Plaintiff has responded to defendant's motion to which defendant has replied.

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The burden of proof is on the moving party to set forth the basis of its motion, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. *Id.* The non-moving party may not rest upon its pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

Summary judgment is a harsh remedy and should not be granted unless the movant "has established his right to judgment with such clarity as to leave no room for controversy." *New England Mutual Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir.1977). The Eighth Circuit has noted, however, that "summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273 (8th Cir.1988).

## I. Statement of Undisputed Facts [1]

Plaintiff was a participant in the Long Term Disability Plan ("Plan") of his employer, Fleming Company, Inc. (Fleming), the policy for which was issued by defendant Travelers' Insurance Company.

On October 6, 1995, plaintiff filed a claim under the Plan for short-term disability benefits, claiming that he suffered from "COPD" (chronic obstructive pulmonary disorder). Plaintiff stated that his illness began August 15, 1995; that he last worked September 17, 1995; and that he expected to return to work October 22, 1995. In describing his job and why his condition prevented him from working, plaintiff stated: "Getting on and off fork lift and heavy lifting. Breathing difficulty." (Deft.'s Exh. D.) On October 20, 1995, defendant Travelers informed plaintiff that a statement from his attending physician was needed to further process the claim. (Deft.'s Exh. E.)

Plaintiff's medical records were forwarded to defendant on October 27, 1995. The medical records submitted to defendant showed the following: Plaintiff visited Dr. Sandra Grummert on September 19, 1995, who referred plaintiff to Dr. Khalid I. Khan, a pulmonary specialist, that same date. Dr. Grummert completed a "Certificate to Return to Work or School" indicating that plaintiff was able to return to work on October 8, 1995. (Deft.'s Exh. G.) Dr. Khan examined plaintiff on October 5, 1995, and noted that plaintiff complained of some chest pain and shortness of breath upon minimal exertion. Upon physical examination, Dr. Khan opined that plaintiff may have significant COPD secondary to chronic tobacco abuse. Dr. Khan scheduled chest x-rays and pulmonary function tests for plaintiff. (Deft.'s Exh. F.) A

---

1. Plaintiff does not dispute the claims made in paras. 1–36 of defendant's Motion for Summary Judgment, (Pltf.'s Resp. to Deft.'s Mot. Summ. Judg., para. 1), which encompass the material facts of this cause.

"Certificate to Return to Work or School" was completed in which it was noted that tests were scheduled for October 17, 1995, and that plaintiff would be able to return to work on October 22, 1995. (Deft.'s Exh. G.) On October 17, 1995, Dr. Khan summarized the results of the scheduled tests:

Patient's PFTs [pulmonary function tests] show just small airway obstruction and mild obstructive defect. Chest x-ray did not show any acute disease. The patient's O2 sat[uration] was 100 but he continues to complain that he is short of breath on minimal-exertion. If he does something he starts having right sided chest pain. The objective tests do not go along with his subjective complaints, hence, I will go ahead and get another complete PFTs with lung volumes and diffusion lung capacity. Will do ABGs and O2 desat[uration] study and re-evaluate him after above.

(Deft.'s Exh. F.)

Dr. Khan indicated that he would determine plaintiff's ability to return to work upon completion of the additional tests. (Deft.'s Exh. G.) On October 23, 1995, Dr. Khan summarized the results of the additional tests: "Patient's PFTs show some mild obstructive defect with some improvement in the mid flows after bronchodilators. DLCO is okay. The patient did not desaturate with exercise.... I told the patient that he probably has mild COPD. He needs to quit smoking." (Deft.'s Exh. F.) Dr. Khan prescribed a Serevent Inhaler and indicated that he would re-evaluate plaintiff in one month. (Deft.'s Exh. F.) A "Certificate to Return to Work or School" was completed in which it was noted that plaintiff would be able to return to work on October 29, 1995. (Deft.'s Exh. G.)

On November 1, 1995, defendant's claim specialist contacted Fleming to verify that plaintiff had returned to work on October 29, 1995. The claim specialist was informed that plaintiff had quit his employment on account of his health condition. On November 6, 1995, Fleming informed defendant that plaintiff had returned to work on October 29, 1995, but stopped working on November 3, 1995, on account of his disability. (Deft.'s Exh. H.)

On November 8, 1995, defendant received an Attending Physician's Statement completed and signed by Nancy Earley, a family nurse practitioner. In this Statement, Ms. Earley stated that plaintiff was diagnosed as having COPD with complications of decreased oxygenation and activity tolerance. Ms. Earley described plaintiff's symptoms as shortness of breath, chest pain and "no strength." Plaintiff's last treatment date was noted to be November 3, 1995, and plaintiff's last test results were noted to be from chest x-rays taken August 21, 1995. Ms. Earley stated that she was not presently treating plaintiff for his condition, but that treatment would be provided for exacerbations and acute illness. It was noted that Ms. Earley had encouraged lifestyle changes and preventive care. On the portion of the Statement asking specifically how and why the condition physically prevented plaintiff from performing his normal occupation, Ms. Earley stated: "[Decreased] activity tolerance—progressive disease complic[ated] by aggravating factors." It was noted that plaintiff's condition had improved and that plaintiff had moderate limitation of functional capacity, that is, that plaintiff was capable of clerical administrative (sedentary) activity. Ms. Earley noted that plaintiff should avoid aggravating factors such as irritating inhalants and dust. Ms. Earley did not complete the portion of the Statement which asked whether plaintiff was totally disabled from performing his occupation and, if so, the dates of his disability. (Deft.'s Exh. I.)

Defendant made short-term disability payments to plaintiff for the time periods of October 8 to October 28, 1995, and November 3 to December 26, 1995. (Hartz Affid. at para. 14.)

On November 20, 1995, defendant's claim specialist sent a medical questionnaire to plaintiff's attending physician, which was never returned to defendant. On December 6, 1995, the claim specialist contacted plaintiff's attending physician for an update on plaintiff's status and was informed that plaintiff's last office visit was November 3, 1995, but that plaintiff continues to be seen by Dr. Khan. The claim specialist was further informed that a treatment program

could not be established until results of the pulmonary function tests were received, and that plaintiff would probably return to work but possibly not to his former occupation. Defendant's claim specialist contacted plaintiff's attending physician on January 11, 1996, and was informed that plaintiff's last office visit was November 3, 1995. The claim specialist spoke with Ms. Earley on January 12, 1996, who stated that plaintiff was in the early stages of COPD and that plaintiff was not totally disabled. Ms. Earley noted that test results did not show much change. Ms. Earley noted that plaintiff would be referred to Dr. Khan because she did not feel qualified to diagnose and treat COPD. Ms. Earley also informed the claim specialist that she had been attempting to contact plaintiff for weeks. (Deft.'s Exh. H.)

On January 23, 1996, plaintiff inquired of defendant why his benefits had been discontinued. Plaintiff was informed that his attending physician stated that he was no longer totally disabled from work. Defendant further informed plaintiff that he was last seen by his attending physician on November 3, 1995, and that benefits could not be paid if there were no regular medical appointments or medical documentation to show plaintiff's disability from work. (Deft.'s Exh. H.)

On March 25, 1996, Fleming submitted a claim to defendant on plaintiff's behalf for long-term disability benefits under the Plan. It was noted in the claim that plaintiff's disability began September 18, 1995. Attached to the claim was a Job Description in which the extent of plaintiff's activities performed at his job per eight-hour work shift were described: sitting—three to four hours; standing—one to two hours; walking—one to two hours; bending over—one to two hours; twisting—one to two hours; climbing, reaching above shoulder level, crouching/stooping, kneeling, or balancing—zero hours; repetitive use of foot controls with both feet—seven to eight hours; repetitive use of both hands—seven to eight hours; and simple/light grasping with both hands—three to four hours. (Deft.'s Exh. J.) Defendant denied the claim on April 11, 1996, stating that plaintiff's documentation did not support a finding of total disability as described in the Plan. (Deft.'s Exh. L.) On April 24, 1996, plaintiff sought review of the denial of his claim. (Deft.'s Exh. M.)

On June 6, 1996, plaintiff's counsel submitted plaintiff's medical records to defendant's Disability Case Manager. Some of the records duplicated those before defendant at the time of its initial determination to deny plaintiff long-term disability benefits. Medical records which were not before defendant at the time of the initial denial but submitted on June 6, 1996, showed the following: On August 15, 1995, plaintiff complained to Ms. Earley of chest pain, shoulder pain, nausea, dizziness, and stiffness in his neck. Plaintiff was prescribed Amoxicillin and Seldane and was instructed to return for re-evaluation in two weeks. On August 21, 1995, plaintiff continued to experience pain in his neck and shoulder, and pain in his chest upon deep breathing. Chest x-rays showed COPD. On September 6, 1995, Ms. Earley ordered that additional tests be performed. (Deft.'s Exh. Q.) Plaintiff saw Dr. Grummert on September 19, 1995, for a second opinion as to his diagnosis of COPD. Plaintiff complained of chest pain and shortness of breath and reported that he felt that he could not do or lift anything. Plaintiff's thirty-four-year smoking history was noted. Physical examination showed plaintiff not to be short of breath at rest but to experience some shortness of breath upon exertion. Plaintiff had moderate tenderness in his right chest upon palpation. Dr. Grummert noted no other abnormality and diagnosed plaintiff as having chest wall pain and probable early COPD. Plaintiff was referred to Dr. Khan. (Deft.'s Exh. Q.) On October 17, 1995, Dr. Craig Williams reported to Dr. Khan that chest x-rays showed unremarkable soft tissues osseous structures. Heart and pulmonary vascularity were normal. Granulomatous calcifications were present but no active pulmonary infiltrates were seen. Dr. Williams opined that plaintiff had old granulomatous disease but noted that no acute cardiopulmonary process was seen. Dr. Khan performed pulmonary function studies on October 23, 1995, the results of which appeared normal but were consistent with a mild obstructive ventilatory impairment. Lung volumes suggested

some air trapping and no significant improvement was noted after inhaled bronchodilators. An exercise oximetry performed that same date showed plaintiff's O2 saturation to be 100% when walking at a fast pace for nine minutes. Plaintiff walked a distance of 1440 feet. The test was ended because plaintiff complained that his legs were tiring. (Deft.'s Exh. Q.) Plaintiff saw Ms. Earley on November 3, 1995, for a second opinion relating to disability. Plaintiff stated to Ms. Earley that he had "almost completely quit smoking" but was having difficulty at work because of dust, decreased strength, and being "short of air." Ms. Earley explained to plaintiff that COPD is progressive in nature if lifestyle modifications were not made. Follow up treatment was discussed. On December 15, 1995, the doctor's office called plaintiff who reported that he felt fine but that he experienced shortness of breath upon exertion. On January 16, 1996, the doctor's office called to inform plaintiff that he needed to schedule a follow up examination with Dr. Khan. On March 25, 1996, plaintiff called and informed Ms. Earley that he had stopped receiving disability insurance benefits. Ms. Earley responded to plaintiff:

> Tried to explain again COPD & criteria for disability not necessarily the same. Needs to [follow up with] Dr. Khan, pulmonologist. Also again discussed pul[monary] therapy & work hardening. Also that you can have COPD & it not yet impact O2 sat[uration], etc. Also that inconsistent [follow up] & inability to get hold of client made goals of [treatment] difficult.

(Deft.'s Exh. Q.)

On August 28, 1996, defendant informed plaintiff that the initial denial of plaintiff's claim for long-term disability benefits was affirmed and stated the following reasons for such affirmance:

> Our records show that Mr. Cochran was diagnosed with [COPD] on August 21, 1995. Mr. Cochran stopped working on September 17, 1995 due to complaints of shortness of breath on exertion. Family Nurse Practitioner, Nancy Earley, referred Mr. Cochran to Dr. Khalid Khan who specializes in pulmonology.

> Based on Mr. Cochran's subjective complaints, Dr. Khan wrote to Ms. Earley on October 5, 1995 stating his impression that Mr. Cochran probably had "significant COPD secondary to his chronic tobacco abuse." Dr. Khan's plan was to get a chest x-ray, pulmonary function and oxygen saturation test. On October 17, 1995, Dr. Khan stated that the pulmonary function test showed "just small airway obstruction and mild obstructive defect." The x-ray did not show any acute disease. Mr. Cochran's oxygen saturation was at 100%. Dr. Khan stated, "The objective tests do not go along with his subjective complaints." Dr. Khan ordered second tests whose results also confirmed that Mr. Cochran has mild COPD. Dr. Khan advised Mr. Cochran to stop smoking and to use a Serevent Inhaler.

> Our records show that Dr. Sandra Grummert gave Mr. Cochran an excuse from work while he was waiting for his referral appointment with Dr. Khan. On the visit of October 5, 1995 with Dr. Khan, Mr. Cochran was given an excuse from work until October 22, 1995 while tests were being scheduled. On October 23, 1995, Dr. Khan extended the excuse through October 28, 1995 when he also ordered the second set of tests. At that time he stated Mr. Cochran could return to work on October 29, 1995.

> Our records do not show that Mr. Cochran returned to Dr. Khan following October 23, 1995. Mr. Cochran did return to see Nurse Practitioner, Nancy Earley on November 3, 1995 at which time she was awaiting a copy of Mr. Cochran's test results from Dr. Khan. Following this visit, Mr. Cochran called Ms. Earley on March 25, 1996 at which time Ms. Earley noted, "Tried to explain again COPD and criteria for disability are not necessarily the same." She also noted that she explained to Mr. Cochran that a person "can have COPD and it not yet impact oxygen saturation, etc."

> As stated above, the October 17, 1995 and October 23, 1995 results indicated that Mr. Cochran had mild COPD with 100% oxygen saturation. Dr. Khan did not advise Mr. Cochran to remain out of work beyond

October 29, 1995 and Ms. Earley has correctly expressed to Mr. Cochran that a diagnosis of COPD is not necessarily disabling. The objective medical evidence does not support a severity in Mr. Cochran's condition that would preclude him from working in his own occupation. Therefore, we must reaffirm our previous denial.

(Deft.'s Exh. U.)

Plaintiff filed the instant cause of action on September 19, 1996.

## II. Discussion

In its Motion for Summary Judgment, defendant claims that its decision to deny plaintiff long-term disability benefits under the Plan was reasonable, not arbitrary and capricious, and thus should not be disturbed by this Court.

In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court established the standard of review applicable to ERISA benefit claims. In *Firestone,* the Court determined that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed *de novo* unless the Plan gives the "administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe the terms" of the Plan. *Id.* at 115, 109 S.Ct. at 956–57. If the Plan grants the administrator or fiduciary the discretion to construe the terms of the Plan, the Court must determine whether the administrator abused its discretion in reaching its decision. *See id.; see also Donaho v. FMC Corp.,* 74 F.3d 894, 898 (8th Cir.1996).[2]

▉▉▉▉ The parties do not dispute that the relevant portion of the Plan grants the defendant discretionary authority to construe the terms of the Plan: "The Company has the discretion to construe and interpret the terms of the Plan and the authority and responsibility to make factual determinations." (Deft.'s Exh. C at 30.) Therefore, under *Firestone* and its progeny, the Court

must determine whether defendant's decision to deny plaintiff's claim for benefits was an abuse of discretion. In making this determination, it is proper to uphold the insurer's interpretation of its policy if that interpretation is reasonable, regardless of whether it is the best interpretation possible. *See Donaho,* 74 F.3d at 899; *Simmons v. Diamond Shamrock Corp.,* 844 F.2d 517, 523 (8th Cir. 1988). Defendant's decision is reasonable "so long as its decision offer[s] a reasonable explanation, based on the evidence, for a particular outcome. If the [defendant's] decision offers a reasonable explanation, [its] decision should not be disturbed even if another reasonable, but different, interpretation may be made." *Donaho,* 74 F.3d at 899 (internal quotation marks and citation omitted). *See also Exbom v. Central States, Southeast & Southwest Areas Health & Welfare Fund,* 900 F.2d 1138, 1143 (7th Cir.1990) (administrator's decision reasonable and thus final if decision "makes a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached"). The defendant's decision is reasonable if it supported by substantial evidence. *Donaho,* 74 F.3d at 900.

The parties do not dispute that the Plan language applicable to the defendant's decision to deny plaintiff benefits is that which defines "disability" under the Plan:

"Disability" or "Disabled" means as the result of accidental injury, sickness, or pregnancy while continuously under the care and treatment of a physician, and while covered under this Plan, one of the following applies to you:

★ During the Elimination Period [six months] and the first 24 months of benefit payment:

★ You cannot perform the material duties of your occupation for any employer, or

★ You are performing at least one of the material duties of your occupation for any employer and you are unable to earn more than 80% of your Predisabili-

---

**2.** Although the Eighth Circuit has recognized that the pre–*Firestone* "arbitrary and capricious" standard versus the post–*Firestone* "abuse of discretion" standard may be a "distinction without a difference," it nevertheless has expressly adopted the "abuse of discretion" standard when reviewing the discretionary decisions of plan administrators under ERISA. *See Donaho,* 74 F.3d at 898 n. 5.

ty Earnings or Indexed Predisability Earnings.

(Deft.'s Exh. C at 10.)

In addition, to be entitled to long-term disability benefits under the Plan, plaintiff was required to submit to defendant 1) proof of disability; 2) evidence of continuing disability; 3) proof that he was under the care and treatment of a physician throughout his disability; 4) information about other income benefits; and 5) any other material information requested by defendant. (Deft.'s Exh. C at 6.)

 In light of the evidence before the defendant at the time plaintiff's claim for long-term disability benefits was denied (outlined above), and after review of the relevant language of the Plan, the undersigned finds that the denial of benefits was reasonable, and thus was not an abuse of discretion. The evidence shows that plaintiff had not been treated by a physician since October 23, 1995; had not seen Ms. Earley since November 3, 1995; and had been released to return to work on October 29, 1995. Objective tests did not support plaintiff's subjective complaints of a disabling condition. No physician ever opined that plaintiff's present condition was disabling, and indeed, plaintiff was informed by Ms. Earley that the condition was not necessarily disabling. A review of defendant's letter informing plaintiff of its final decision to deny plaintiff benefits shows that defendant carefully examined all of the relevant information and evidence and made an informed judgment that plaintiff was not entitled to benefits under the terms of the Plan. Because the decision was well grounded in reason, well supported by the evidence, and well backed by the terms of the Plan, it cannot be considered an abuse of discretion. *See Exbom*, 900 F.2d at 1143.

Plaintiff argues that defendant's final decision was arbitrary and capricious inasmuch as it failed to discuss and thus ignored the Attending Physician's Statement completed by Ms. Earley on November 8, 1995. Even had the defendant considered this Statement, there nevertheless existed substantial evidence to support its decision that plaintiff was not entitled to benefits under the Plan. *See, e.g., Donaho*, 74 F.3d at 899 (decision not to be disturbed even if another reasonable, but different, interpretation may be made); *Cox v. Mid–America Dairymen, Inc.*, 13 F.3d 272 (8th Cir.1993) (substantial evidence supported administrator's decision even where conflicting evidence existed in the record).

Inasmuch as substantial evidence supports the defendant's decision to deny plaintiff's claim for long-term disability benefits under the Plan, the decision was reasonable and should not be disturbed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant Travelers' Insurance Company's Motion for Summary Judgment (Docket No. 10) is granted.

Judgment shall be entered accordingly.