### Barbara SCOTT Plaintiff

v.

### UNUM LIFE INSURANCE COMPANY OF AMERICA and SPARKS REGIONAL MEDICAL CENTER Defendants

### No. CIV. 02–2157.

United States District Court,
W.D. Arkansas,
Ft. Smith Division.

March 4, 2003.

Fred L. Caddell, Nolan, Caddell & Reynolds, for Plaintiff or Petitioner.

David M. Donovan, Watts, Donovan & Tilley (UNUM), J. Randall McGinnis, Warner, Smith & Harris (Sparks), for Defendant or Respondent.

### *OPINION & ORDER*

DAWSON, District Judge.

This action is brought by the plaintiff, Barbara Scott, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (1997) (ERISA or the Act) alleging that she is entitled to total and permanent disability benefits under the long-term disability plan offered by her former employer, defendant Sparks Regional Medical Center. The plan is insured and administered by defendant Unum Life Insurance Company of America. The case between plaintiff and defendants is now before the court on the stipulated administrative record and the parties' briefs. For the reasons set forth herein below, the decision of the administrator will be upheld; plaintiff's claims will be denied; and this case will be dismissed.

### *Background.*

Plaintiff was employed by Sparks as a registered nurse and paramedic supervisor. On November 24, 1997, Plaintiff injured her back lifting a heavy patient dur-

ing the course of an ambulance run. After the injury, Plaintiff underwent a nine-week work hardening program followed by a functional capacity evaluation (FCE) performed on March 10 and 12, 1998. The therapist who administered the FCE cleared Plaintiff to return to light duty work within specified restrictions and limitations. (Stip.Rec.114–123.)

Plaintiff initially applied for and received long-term disability benefits under the Plan provision authorizing payments for the first twenty-four months if the claimant is "limited from performing the material and substantial duties of [her] regular occupation due to [her] sickness or injury." (Stip. Rec. at 545.) The plan administrator approved the initial payments after determining that Plaintiff could not continue her job as a nurse/paramedic because the position required physical abilities that exceeded Plaintiff's recommended work restrictions. (Stip. Rec. at 62–67.) The disability payments began on May 24, 1998. (Stip. Rec. at 71–70.)

During the spring and summer of 1998, three different evaluating physicians, Dr. Cheyne (a sports medicine specialist), Dr. Runnels (a neurosurgeon), and Dr. Edmondson (an internal medicine specialist and Plaintiff's primary physician), reported that Plaintiff's condition was expected to improve to the point that she would eventually return to work with restrictions and limitations on lifting, bending, stooping, and prolonged standing and sitting. (Stip. Rec. at 48, 51, 113, 124, 126–127, 133–134.) Despite the optimistic prognoses of the medical doctors, Plaintiff continued to experience pain in her back and left hip area.

Dr. David Davis (a neurologist) performed an examination and evaluation of the Plaintiff in June 1998. Dr. Davis could not provide a definite explanation for Plaintiff's back, hip, or leg pain. (Stip. Rec. at 130–132.) MRIs and x-rays of Plaintiff's lumbar spine and left hip areas revealed minimal disc bulge in one area of Plaintiff's spine, but no significant pathology.

An independent medical evaluation was performed by Dr. Bruce Safman on August 26, 1998. (Stip.Rec.146–147.) The report by Dr. Safman noted a left hip strain and recommended soft-tissue injections and anti-inflammatory medications. Dr. Safman thought that with this treatment regimen Plaintiff would be able to return to work in three to six weeks without restriction or limitation. *Id.* Plaintiff received the first injection in September 1998 from Dr. Fisher. According to Dr. Edmondson's notes of Plaintiff's office visit on October 9, 1998, the injection did not do anything to decrease Plaintiff's pain. Dr. Edmondson observed that Plaintiff was "totally unable to work due to the persistent pain." (Stip. Rec. at 149.)

On December 7, 1998, a medical review of Plaintiff's entire claim file was conducted by Dr. Carolyn Jackson, a UNUM staff physician. (Stip. Rec. at 167–165.) Dr. Jackson noted the disparity between the results of the FCE performed in March 1998 and Dr. Edmondson's more recent conclusion that Plaintiff was totally unable to work. She observed that Dr. Edmondson's opinion was based upon Plaintiff's subjective complaints of pain, and she suggested that non-medical means be used to assess Plaintiff's ability to function on a daily basis. (*Id.* at 165.)

On December 10, 1998, Plaintiff was seen by Dr. Buie, an orthopaedic surgeon. Dr. Buie diagnosed Plaintiff with, "back pain, radicular component, etiology undetermined." Dr. Buie referred Plaintiff to Dr. Saer at the Spine Institute in Little Rock "to see if there is any operative treatment that might be appropriate." (Stip. Rec. at 180.)

Plaintiff attempted to return to work as an administrative nurse in the psychiatric ward of the hospital on January 19, 1999. She went home after working less than half a day complaining that the pain prevented her from continuing. Upon being informed that Plaintiff had returned to work, the plan administrator terminated Plaintiff's disability benefits. Benefits were reinstated after Plaintiff hired an attorney and demanded a review of her claim.

Plaintiff was evaluated by Dr. Nguyen at the Spine Institute on February 25, 1999. A discogram was performed to aid in pinpointing the source of Plaintiff's pain. (Stip. Rec. at 318–321.) Dr. Saer reviewed the discogram report and recommended surgery for a disc excision and laparoscopic fusion. (Stip. Rec. at 312.) Plaintiff underwent the surgery on June 21, 1999 and returned to Dr. Saer for follow-up evaluations in July, August, and October 1999. (Stip. Rec. at 313—315.) Dr. Saer believed the surgery to have been successful and had no medical explanation for Plaintiff's continued back pain. He recommended that Plaintiff gradually increase her activity level and undertake an exercise program to strengthen her back and abdominal muscles. *Id.*

Meanwhile, Plaintiff continued to be evaluated on a regular basis by Dr. Edmondson, who maintained his opinion that Plaintiff's continued pain was real and prevented her from returning to work in any capacity. In February 1999, Dr. Edmondson reported:

> the etiology of the patient's pain remains obscure, and she has had extensive evaluation. However, it would seem that her pain is quite real and quite limiting ..., and at this point she certainly seems to be unable to perform any of her regular occupation or any occupation for which she is fit.

(Stip. Rec. at 197–198.) In March 2000, Dr. Edmondson saw Plaintiff and reported that she has remained disabled since the back surgery. (Stip. Rec. at 381.)

In June of 2000, one year following the surgery, Dr. Saer examined Plaintiff and ordered an MRI in the hopes of defining the source of Plaintiff's continued and unexplained back and leg pain. (Stip. Rec. at 477.) On June 27, 2000, Dr. Saer saw Plaintiff for a follow-up visit. The MRI tests were negative, the surgery deemed a success, and Dr. Saer had no explanation for Plaintiff's ongoing pain. Dr. Saer recommended a continued exercise program. (Stip. Rec. at 478–479.) On July 18, 2000, Dr. Saer completed an Estimated Functional Abilities Form provided by UNUM and approved Plaintiff for return to light activity work with restrictions. (Stip. Rec. at 409–410.)

A UNUM representative interviewed Plaintiff in her home on June 15, 2000. (Stip.Rec.396–397.) Plaintiff confirmed that she continued to experience persistent pain but was able to move around her home unassisted, dress herself, do some laundry while sitting down, visit friends, travel, go out to eat, read and watch television. Plaintiff reported that she must constantly change positions, cannot stay comfortable for very long, and that she obtained the most pain relief by laying on the sofa and putting her left leg up on the back. The pain also prevented her from sleeping well. *Id.*

UNUM obtained a transferrable skills analysis from Genex Services, Inc. on August 15, 2000. The analyst was provided with the estimated functional abilities from completed by Dr. Saer on July 18, 2000, and Plaintiff's self-reported educational background and work history. Based upon information stating that the Plaintiff was capable of working full time light duty employment with restrictions, the analyst

determined that there were at least 7 full time occupations reasonably available to a person with Plaintiff's education and work history. (Stip. Rec. at 445–447.)

UNUM denied Plaintiff's claim for continued disability benefits on August 23, 2000, after determining that she was no longer eligible under the terms of the policy. (Stip. Rec. at 427–429.) Plaintiff requested a review of the decision on November 17, 2000, and submitted additional medical information for UNUM's consideration. The additional evidence included reports by Dr. Buie and Dr. Edmondson. Both physicians were of the opinion that Plaintiff was completely disabled and provided similar evaluations which noted that Plaintiff suffered from moderate to severe pain; had very limited ability to lift and carry; could not bend, squat, crawl, climb, stoop, crouch or kneel; and was limited in her ability to sit, walk, and stand during an 8 hour work day. Also submitted for review was a Social Security decision finding Plaintiff completely disabled as of the administrative hearing on June 2, 1999, and a vocational evaluation concluding that, because of the chronic pain, Plaintiff could not return to any work of a full time nature. (Stip. Rec. at 438–440, 450–463.)

Elizabeth A. McLellan, MSN, MPH, a nurse employed by UNUM, conducted a complete medical record review of Plaintiff's claim file on January 8, 2001. (Stip. Rec. at 482–484.) Nurse McClellan noted the disparity between the opinion of Dr. Saer and those of Dr. Buie and Dr. Edmondson. After discussing the matter with UNUM staff physician Nancy Ball, it was decided that Dr. Robert Keller, another UNUM staff physician, would review the file and call Dr. Saer to clarify the Plaintiff's work capacity. *Id.*

Dr. Keller completed a file review on February 21, 2001, observing:

Multiple evaluations after her injury failed to demonstrate positive physical or neurologic findings and since all examinations were within normal limits the entire disability rested on the patient's report of pain. IME's [independent medical examinations] have indicated that she could return to work, and she did attempt to do so briefly, but she indicated that she was not able to continue. The discogram in March of 1999 was interpreted as positive leading to an anterior fusion, which did not eliminate the patient's pain. More recently there are reports of limitation of spinal flexibility. On one occasion there is a report of bilateral positive straight leg raise without note of sitting straight leg raise test. Reflexes and strength in the lower extremities have remained normal throughout. Her anterior spinal fusion did not involve the spinal canal and is reported to be solid with a normal MRI in June of 2000. Dr. Buie has made the diagnosis of laminectomy and failed back fusion syndrome. However, the claimant did not undergo a laminectomy, her spinal canal was not entered and she is reported to have a solid anterior fusion at L5–S1, so it would be difficult to call this a failed back syndrome by most definitions. The claimant's limitations appear to be on the basis of a chronic pain sydrome. She has been released to various work activity levels by her AP [attending physician], an orthopedist, and neurosurgeon. The vocational rehab counselor states that she cannot work, but this is based on the patient's history of chronic pain, as well as other limitations provided.

(Stip. Rec. at 486.)

On March 7, 2001, Dr. Keller initiated a call to Dr. Saer to discuss Plaintiff's condition. Dr. Saer confirmed that, based upon his observation of the Plaintiff and his medical findings, Plaintiff had the capacity for light work activity so long as she would be able to change position and move about

frequently and would not have to lift more than 20 pounds. (Stip. Rec. at 489, 501–502.) The decision to terminate Plaintiff's disability payments was upheld. (Stip. Rec. at 507–508.) Plaintiff's administrative appeal was denied on June 26, 2001. (Stip. Rec. at 512–514.)

### Standard of Review.

The complaint seeks relief against defendants under the provisions of 29 U.S.C. § 1132, claiming that Plaintiff is due benefits under the terms of an ERISA plan. *See* 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). When the plan gives the administrator discretionary authority, the administrator's decision is reviewed deferentially for an "abuse of discretion." *Woo v. Deluxe Corp.,* 144 F.3d 1157, 1160 (8th Cir. 1998). The deferential standard does not permit this Court to reverse the administrator's decision simply because we disagree with it. *Donaho v. FMC Corp.,* 74 F.3d 894, 898 (8th cir.1996). The administrator's decision must be upheld if it is reasonable and based upon substantial evidence. *Id.* The parties agree that ERISA governs the plan and that UNUM had discretionary authority to determine Plaintiff's eligibility for continued benefits.

In the Eighth Circuit, "some less deferential standard of review is triggered where the claimant presents material, probative evidence demonstrating that (1) a palpable conflict of interest ... existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her." *Schatz v. Mutual of Omaha Ins. Co.,* 220 F.3d 944, 947 (8th Cir.2000) (citing *Woo,*

144 F.3d at 1160) (internal quotation omitted). The *Woo* factors have come to be referred to as a "two-part gateway requirement" that must be cleared before a court may apply a "sliding scale" approach to determining the appropriate standard of review. *Id.* Generally, a conflict of interest is found when the insurer is also the plan administrator, as is the case here. *See Barnhart v. UNUM Life Ins. Co.,* 179 F.3d 583, 587–88 (8th Cir.1999).

While Plaintiff does not cite *Woo* or raise the issue directly, she does infer that some less deferential standard of review might be appropriate in this case. Assuming that Plaintiff has satisfied part one of the *Woo* gateway due to the fact that UNUM is both the insurer and the plan administrator, it becomes Plaintiff's burden to present material, probative evidence that the conflict of interest actually caused a serious breach of the administrator's fiduciary duty to her. *Id.* at 589. Plaintiff has failed to convince us the that any conflict of interest caused such a breach.

Plaintiff contends that the administrator never intended to pay her full benefits as evidenced by a note in the file showing that reserves of $40,649.60 had been set aside for payment of her claim. (Stip. Rec. at 365.) According to Plaintiff, the amount of the reserves was insufficient to pay benefits for more than a period of about 4 to 5 years, and the fact that UNUM did not budget sufficient money to pay her the full amount due would be evidence of a serious breach of fiduciary duty. We disagree. The record as a whole, all 673 pages of it, does not lead us to question whether the administrator based its decision to terminate benefits solely on the fact that insufficient funds were set aside to pay Plaintiff's claim. We are satisfied that the administrator considered all of the evidence in the record and

did not breach its fiduciary duty in determining that Plaintiff was no longer entitled to plan benefits. As Plaintiff has failed to show that a heightened standard of review is warranted in this case, the deferential standard of review will be used to evaluate the administrator's decision.

### Discussion.

Benefit payments are continued beyond twenty-four months only if the claimant is "not working and, due to the same sickness or injury, [she] is unable to perform the duties of any gainful occupation for which [the claimant is] reasonably fitted by education, training, or experience." (Stip. Rec. at 545.) Plaintiff claims that since her injury, moderate to severe pain has prevented her from working in any gainful occupation. After carefully reviewing the record, the Court finds that there is substantial evidence to support the administrator's decision to deny benefits.

In determining that Plaintiff was capable of holding gainful employment, the plan administrator relied upon the FCE performed in March 1998; the independent medical examinations of several doctors who could find no physical or neurological explanation for Plaintiff's pain and cleared her to return to light duty work; the opinion of Dr. Saer, who performed surgery on Plaintiff and observed and evaluated her condition on multiple occasions; the vocational review performed by Gentex Services; and the file reviews by Drs. Jackson and Keller.

The additional evidence submitted by the Plaintiff was taken into consideration by the administrator although not totally relied upon. Dr. Keller reviewed the reports of Dr. Buie and Dr. Edmondson, noting that both doctors had released Plaintiff to some degree of work activity, but not full-time employment. Dr. Keller considered but discounted Dr. Buie's diagnosis of failed back fusion syndrome, because Plaintiff had not undergone the surgical procedure on which Dr. Buie's diagnosis was based. Plaintiff's assertion that the administrator did not give sufficient deference to the opinions of her treating physicians, Dr. Edmondson and Dr. Buie, is unavailing. Both Dr. Edmondson and Dr. Buie are excellent physicians and their opinions and that of Dr. Saer were considered by the administrator in reaching a decision. As the administrator's decision is supported by a reasonable explanation and interpretation of the evidence in the record, the decision cannot be disturbed.

The fact that Plaintiff was found eligible for Social Security disability benefits does not alter our opinion. The hearing on Plaintiff's claim for Social Security benefits was conducted on June 2, 1999, about two weeks before Plaintiff underwent back surgery. After reviewing the decision of the Administrative Law Judge, it is clear that the ALJ found Plaintiff's subjective complaints of pain credible based upon Dr. Saer's diagnosis and recommendation for surgery. (Stip. Rec. at 450–453.) The ALJ surmised that the surgery would likely improve Plaintiff's condition, and he recommended that her file be reviewed in one year to see if continued benefits were appropriate. *Id.* In any event, the Social Security determination was not binding upon the defendants in this case. *See Delta Family–Care Disability v. Marshall,* 258 F.3d 834, 842 n. 11 (8th Cir. 2001).

### Conclusion and ORDER

As all benefits due under the policy have been paid, plaintiff is not entitled to a judgment against defendants. Accordingly, plaintiff's claim is hereby DENIED and this case is DISMISSED.

IT IS SO ORDERED.